KAMER ZUCKER ABBOTT
Carol Davis Zucker    #2543
Timothy W. Roehrs    #9668
3000 West Charleston Boulevard, Suite 3
Las Vegas, Nevada 89102-1990
Tel: (702) 259-8640
Fax: (702) 259-8646
Email:  czucker@kzalaw.com
Email:  troehrs@kzalaw.com

Jim D. Newman, *pro hac vice,* (Cal. Bar. No.133232 )
Tazamisha H. Imara, *pro hac vice*, (Cal. Bar No. 201266)
CPS SECURITY SOLUTIONS, INC.
436 West Walnut St.
Gardena, California 90248
Tel: (310) 878-8165
Fax: (310) 868-2835
Email:  jnewman@cpssecurity.com

Attorneys for Defendants
CPS Security (USA), Inc.
and CPS Construction Security Plus, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS TALLMAN, Individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> CPS SECURITY (USA), INC., CPS CONSTRUCTION SECURITY PLUS, INC., and JOHN DOES I through XXX, actual names and number unknown, <br><br> Defendants. | CASE NO. 2:09-cv-00944-PMP-PAL <br><br> **STIPULATION AND JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT** <br><br> **EXPEDITED REVIEW REQUESTED** |

By and through their undersigned counsel, as set forth below, Plaintiffs and Defendants hereby stipulate and jointly move for approval of the parties' settlement, and state the following in support thereof:

/ / /

1.     Plaintiffs allege that Defendants violated the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201-206 ("FLSA"), by improperly compensating Plaintiffs during their employment.

2.     Defendants deny the Plaintiffs' allegations and maintain that Plaintiffs were correctly paid.

3.     Other than named Plaintiff Tallman, the following persons filed Consents to join this action: Paul Dreiblatt, Donald Mika, Michael Minor, William Monks, Clifford Nagy, Rafael Vera and John Whittington.   In March, 2012, Plaintiffs Minor and Monks settled their claims during a Mandatory Settlement Conference.  The federal court entered an order approving that settlement and granting the Parties' Joint Motion to Dismiss the Claims of Minor and Monks on October 15, 2012. (Docket No. 174).

4.     To avoid the costs and the uncertainty of litigation, the parties have negotiated a settlement of the FLSA claims by the remaining parties in this matter, except for the Plaintiffs' claims for attorney's fees and costs.  Agreements executed by all of the remaining Plaintiffs are attached hereto as **Exhibit 1**.

5.     It is defendants' belief that pursuant to 29 C.F.R. § 825.220(d) and <u>Lynn's Food Stores, Inc. v. United Sates</u>, 679 F.2d 1350 (11th Cir. 1982), when a plaintiff brings a private action for back wages under 29. U.S.C. § 216(b), the parties must present any resolution of the action to the Court for approval.  Accordingly, the parties request the Court schedule inspection of the Agreements for each Plaintiff, as set forth in **Exhibit 1,** in order to review the terms of the proposed settlement to which the parties have agreed.

6.     The parties stipulate that the settlement represents a fair and reasonable resolution of Plaintiffs' claims against Defendants and advances judicial economy.

7.     The parties have agreed that the settlement is effective only if the court approves the settlement as to all Plaintiffs.

8.     The court shall retain jurisdiction to determine whether Defendants have complied with the monetary payment provisions of **Exhibit 1** and for post-settlement motions referenced therein, including Plaintiffs' motion for attorney's fees and costs and Defendants' re-submission of their motion for sanctions.

9.      Once the settlement has been approved by this Court, the parties shall have sixty (60) days within which to file the post-settlement motions referenced therein, including Plaintiffs' motion for attorney's fees and costs and Defendants' resubmission of their motion for sanctions.

10.     WHEREFORE, the parties respectfully request that the Court approve the proposed settlement agreements as set forth in **Exhibit 1**.

DATED: August 13, 2013                         DATED: August 13, 2013

Leon Greenberg Professional Corp.              KAMER ZUCKER ABBOTT

By:      _/s/ Leon Greenberg_                  By:      _/s/ Timothy W. Roehrs_
         Leon Greenberg      #8094                      Carol Davis Zucker      #2543
         Dana Sniegocki      #11715                     Timothy W. Roehrs       #9668
         2965 S. Jones Boulevard, Suite E-4             3000 West Charleston Boulevard, Suite 3
         Las Vegas, Nevada 89146                        Las Vegas, Nevada 89102-1990
         Tel: (702) 383-6085                            Tel: (702) 259-8640
         Fax: (702) 385-1827                            Fax: (702) 259-8646


         Attorneys for Plaintiff                        Attorneys for Defendants


## ORDER

The Court, having reviewed the submissions of the parties, hereby finds that the settlement reached between them represents a fair and reasonable resolution of Plaintiffs' Fair Labor Standards Act claims against Defendants and advances judicial economy.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the settlement in the above-referenced action represents a fair and reasonable resolution of Plaintiffs' Fair Labor Standards Act claims against Defendants, and the settlement is hereby approved.

**IT IS FURTHER ORDERED** that The Court shall retain jurisdiction (1) to ensure Defendants' compliance with its promise to pay the settlement amount; (2) for Defendants to re-file their motion for sanctions arising from the mistrial declared on December 12, 2012; and (3) to

determine any party's motion for reasonable attorney's fees and/or taxation of court costs as authorized by their settlement agreement.  All such post-settlement motions shall be filed within sixty (60) days following entry of the court's order approving this Settlement and Release; provided that the Parties may stipulate to extend this deadline.

Date: _____        _____
                                                              UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

# EXHIBIT 1

<u>Settlement Agreement and Release</u>

1. <u>Parties</u>.      This Settlement Agreement and Release ("Agreement") is entered into by and between Rafael Vera ("Vera") and CPS Security (USA), Inc.,("CPS") a Nevada corporation;

2. <u>Recitals</u>.  This Agreement is entered into with reference to the following facts:

     a.      Vera was employed by CPS as a security officer;

     b.      On or about April 30, 2009, Dennis Tallman filed in the Nevada District Court for Clark County an action against CPS seeking allegedly unpaid wages;

     c.      Tallman's Complaint asserted a class action pursuant to Nevada law and a collective action pursuant to the federal Fair Labor Standards Act ("FLSA").

     d.      Based upon the presence of a federal question, CPS timely removed the action to federal court ("federal action");

     e.      Tallman's motion for class certification was denied without prejudice by the federal court and, at Tallman's request, his wage claims arising under Nevada law were remanded to the state court.

     f.      Seven other Plaintiffs (Paul Dreiblatt, Donald Mika, Michael Minor, William Monks, Clifford Nagy, Rafael Vera and John Whittington) timely filed consents to join Tallman's collective action in federal court.

     g.      In March, 2012, Plaintiffs Minor and Monks settled their claims during a Mandatory Settlement Conference.  The federal court entered an order approving the settlement and granting the Parties' Joint Motion to Dismiss the Claims of Minor and Monks on October 15, 2012.  (Docket No. 174).

     h.      The FLSA claims of the six remaining Plaintiffs are pending trial in federal court. Following a further Mandatory Settlement Conference held on June 26, 2013, CPS and the six remaining Plaintiffs have reached an agreement to settle the FLSA claims of all six Plaintiffs.

     i.      CPS disputes and denies that it acted wrongly in any manner toward Plaintiffs in any respect and enters this Agreement in order to avoid further litigation.  All Plaintiffs specifically acknowledge that this Agreement does not constitute an admission of liability by CPS with respect to any matter whatsoever, but that by entering into this Agreement CPS will assume a legal obligation to make certain payments to the Plaintiffs under the conditions, and in the amount, specified in this Agreement.

     j.      CPS's agreement to settle is expressly conditioned upon the agreement of all six remaining Plaintiffs to finally settle their FLSA claims.  Each Plaintiff expressly

agrees and acknowledges that settlement by all remaining Plaintiffs is a condition of the settlement and that CPS's obligations arising from this Agreement shall not be binding if (1) any Plaintiff fails to execute a release of his claims, except as expressly preserved herein; (2) any Plaintiff revokes his consent within 8 days after executing the release; or (3) the Court fails to approve the Settlement Agreement.

3.  <u>Consideration</u>.  In consideration of the mutual covenants herein:

a.      CPS shall pay to Rafael Vera the sum of Eight Thousand Dollars ($8,000), less required payroll deductions ("Payment"), in full satisfaction of his FLSA claims and all other potential claims except those expressly preserved in this Agreement. Vera shall have the opportunity to submit to CPS, within 10 days following the date the court approves the settlement of the federal action, an IRS W-4 form for use in determining his applicable payroll deductions, which W-4 form CPS shall use to determine those deductions.  If Vera fails to do so, CPS shall make those required payroll deductions pursuant to the information it has on file or as otherwise required by law.

b.      A check made payable to "Rafael Vera" shall be delivered to his counsel on or before the 30th day following entry in the federal action of the order by which the Court approves the settlement embodied in this Agreement and the other agreements executed by all remaining Plaintiffs in this action;

c.      The Payment represents full and final settlement of any and all claims that Vera has made or could have made against CPS and any of its current or former officers, directors, employees, representatives, members, managers, partners, limited partners, administrators, fiduciaries, attorneys, parents, heirs, trustees, subsidiaries, affiliates, divisions, predecessors, successors, assignees, agents, or any of them, and all persons acting by, through, under or in concert with each or any of them (hereafter, collectively, the "Releasees") except for those claims expressly preserved in this Agreement.

d.      CPS and Plaintiffs shall execute a Stipulation for court approval of the settlement; the form of such Stipulation shall be as in **Exhibit 1.**  Upon the court's approval, the FLSA claims asserted in the federal action shall be dismissed with prejudice as to all parties.  The Court shall retain jurisdiction (1) to ensure CPS's compliance with its promise to pay the settlement amount; (2) for CPS to re-file its motion for sanctions (including the application for costs and attorney's fees) arising from the mistrial declared on December 12, 2012; and (3) to determine Plaintiffs' motion for reasonable attorney's fees and/or taxation of court costs made pursuant to 29 U.S.C. § 216(b).  All such post-settlement motions shall be filed within sixty (60) days following entry of the court's order approving the settlement; provided that the Parties may stipulate to extend this deadline.

e.      CPS shall issue an IRS Form W-2 to Vera reflecting the gross amount of the wage

check paid to him and reflecting the deduction of payroll taxes;

4. <u>Release of Known and Unknown Claims</u>:  Except as expressly preserved herein, Vera hereby knowingly and voluntarily releases and forever discharges each of the Releasees from any and all causes of action and claims of any nature whatsoever (hereafter "Claims") which Vera now has or may hereafter have against the Releasees, or any of them, from the beginning of time through the date that the Court approves this Settlement Agreement. The Claims released include, without limitation except as expressly preserved herein ("Preserved Claims"), any claims arising out of or based upon Vera's employment, including, but not limited to, statutory claims, tort claims, contractual claims, and equitable claims.

5. <u>Preserved Claims.</u>  This Agreement shall not release any claims Vera possesses for payment of attorney's fees and costs pursuant to 29 U.S.C. 216(b); however, the parties agree those claims can be subsequently released by a court order or by Vera's attorneys. The Parties further agree that Vera shall retain his existing claims arising under Nevada law asserted as a class action participant in the state court actions captioned (1) *Dennis Tallman Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A389249 ("*Tallman*"); (2) *Donald Mika and Beryl Harter, Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A-1255195-C ("*Mika/Harter*"), and (3) *Beryl Harter, Donald Mika and Ronald Simone Individually and on Behalf of Others Similarly Situated v. Christopher Coffey et al*, Clark County District Court Case No. A-12-673852-C. ("Harter/Mika/Simone").  The *Mika/Harter* state court action is currently pending writ review by the Nevada Supreme Court, Case No. 61390, as is the *Tallman* action.  The Parties further agree as follows:

   a.  CPS and Releasees may not and will not assert this settlement as a bar to Vera's foregoing Nevada law  claims and may not introduce the fact of this settlement, the Payment, and/or or this Agreement  for any purpose in any such state court litigations or any arbitration of the claims made in such state court litigations; provided that

      i.  if a judgment or award is entered in Vera's favor upon those Nevada law claims, CPS and/or Releasees shall be entitled to reduce such judgment by $1.00 for every $1.00 of the gross amount  paid to Vera pursuant to this Agreement and advise the court as to the reasons for this reduction if, in the Releasees' good faith judgment, this is needed to effectuate this reduction;

      ii.  if a judgment or award is entered in Vera's favor in those state court litigations or any arbitration of the claims made in such state court litigations, calculation of the amount of prejudgment and/or post-judgment interest, if any, shall be based upon the amount of the judgment less the deduction referenced in Paragraph 5(a)(i) above and this Agreement may be introduced for that purpose; and

    iii.  the fact of this settlement, this Agreement, and the Payment may be introduced in any legal or arbitration proceeding, motion or application that takes place following the determination on the merits of Vera's claims and damages, if any, in the state court litigations or in any individual arbitration that involves fees or costs paid or to be paid to any attorney for Vera or to CPS and/or Releasees in any individual arbitration proceeding and/or any litigation.

   b.  Vera, either on his own behalf or on behalf of other persons including the members of any class of persons, may not and will not assert or introduce into evidence, in any state court litigations or any arbitration of the claims made in such state court litigations, the fact of the settlement embodied in this Agreement, the terms thereof, and/or this Agreement. .

   c.  In the event either party breaches paragraph 5(a) or 5(b) immediately above, as applicable, in one of the state court lawsuits referenced above, the parties shall advise the court of this Agreement and the opposing party has the right to request the court fashion appropriate relief as is available by law.   In the event such breach takes place during the course of an arbitration proceeding, the non-breaching party shall have the right to have a new arbitrator appointed to hear and determine the parties' dispute.

6.  <u>Waiver of Claims under ADEA</u>.  Vera acknowledges that he is waiving and releasing any rights he may have under the Age Discrimination in Employment Act of 1967 ("ADEA") and that this waiver and release is both knowing and voluntary.  Vera and CPS agree that this waiver and release does not apply to any rights or claims that may arise under ADEA after the Effective Date of this Agreement.  Vera acknowledges that the consideration given for this waiver and release is in addition to anything of value to which Vera was already entitled.  Vera further acknowledges that he has been advised by this writing that:

   a.  He should consult with an attorney prior to executing this Agreement;

   b.  He has at least twenty-one (21) days within which to consider this Agreement;

   c.  He has at least seven (7) days following the execution of this Agreement by the Parties to revoke the Agreement; and

   d.  This Agreement shall not be effective until the eighth (8th) day after he has executed the Agreement.

Vera may sign this Release and the Agreement prior to the end of the twenty-one (21) day consideration period, thereby commencing the mandatory seven (7) day revocation period. By signing this Release and the Agreement, Vera indicates his decision to waive the twenty-one (21) day consideration period.

7.  <u>No Reemployment</u>.  Vera covenants that he will not reapply for employment with CPS or

any of the Releasees.  The Parties agree that, should Vera breach this promise and become reemployed by Releasees, this agreement shall constitute cause for immediate dismissal.

8.  <u>Unknown Facts or Claims</u>.  Vera  expressly acknowledges his understanding there may exist damages or claims in his favor pertaining to the matters released of which he has no knowledge, reason to know or suspicion at the time of execution of the Agreement.  Vera acknowledges further that he may discover facts different from or in addition to those he now knows or believes to be true with respect to the actions of those persons released in Paragraph 4 above [release] prior to the date of the Agreement.  Vera acknowledges the Agreement shall apply to all such unknown and unanticipated damages or claims as well as to those now known or disclosed, and, further, that the Agreement shall remain in full force and effect in all respects notwithstanding any such different or additional facts.

9.  <u>Non-Disparagement</u>.  Vera agrees that he will not make any disparaging remarks or statements to anyone regarding CPS or any of the other Releasees.  CPS agrees that no officer or director or human resources department employee of the Company shall make any disparaging remarks or statements regarding Vera.   CPS shall be entitled to confirm the dates of Vera's employment in response to inquiries about his employment but shall not direct or authorize any other communications be made about Vera's employment with CPS. Owing to the size of its business operations, CPS cannot warrant that none of its employees will make communications concerning Vera's employment that it does not direct or authorize and it will not be liable for its failure to prevent such communications. Notwithstanding this provision, the parties shall not be in breach of this section based on the making of any truthful statements under oath if compelled to do so by subpoena or other judicial process.

10. <u>Assumption of Risk</u>.  Each of the Parties fully understands that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by any of the Parties to be true, each of the Parties expressly accepts and assumes the risk of such possible difference in fact and agrees that the release remains effective notwithstanding any such difference in fact.  This Agreement shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating purposes are (for any reason) inaccurate or inappropriate.

11. <u>Effective Date</u>.  The Effective Date of this Agreement shall be date upon which the Court enters an Order Approving this Settlement Agreement and Release.

12. <u>Choice of Law</u>.  This Agreement shall be construed in accordance with, and governed by the laws of the State of Nevada.

13. <u>Integrated Agreement</u>.  This Agreement represents the complete and exclusive statement of the entire settlement agreement between the Parties and supersedes other promises and agreement or any kind, as well as all negotiation and discussions between the Parties hereto and/or their respective legal counsel with respect to the subject matters covered herein.  No other agreements, representations or warranties, express or implied, oral or written have been made by any of the Parties concerning the subject matter of this integrated agreement.  The parties may exchange copies of these agreements and sign them on separate copies, the

Settlement Agreement and General Release                                  Page 6

copies so executed and exchanged shall be binding on the parties as if they were a single, originally signed, document.

14. Confidentiality. This Agreement shall be lodged with the court for the court's consideration and approval, but the Agreement shall not be filed in any court, except if necessary to enforce its terms or if such filing is compelled by a court order.

Dated: August 13, 2013

_____
William Babcock, CFO
CPS Security (USA), Inc.

Dated: August 6, 2013

_____
Rafael Vera

STATE OF NEVADA          )
                         ) ss.
COUNTY OF CLARK          )

    On this 10th day of August, 2013, personally appeared before me, a notary public, Rafael Vera personally known (or proved) to me to be the person whose name is subscribed to the above instrument, who acknowledged that she executed the above document.

    (SEAL)

_____
Notary Public



DANA SNIEGOCKI
Notary Public, State of Nevada
Appointment No. 11-5109-1
My Appt. Expires Jul 1, 2015

## Settlement Agreement and Release

1. <u>Parties</u>.   This Settlement Agreement and Release ("Agreement") is entered into by and between Donald Mika ("Mika") and CPS Security (USA), Inc.,("CPS") a Nevada corporation;

2. <u>Recitals</u>.  This Agreement is entered into with reference to the following facts:

      a.     Mika was employed by CPS as a security officer;

      b.     On or about April 30, 2009, Dennis Tallman filed in the Nevada District Court for Clark County an action against CPS seeking allegedly unpaid wages;

      c.     Tallman's Complaint asserted a class action pursuant to Nevada law and a collective action pursuant to the federal Fair Labor Standards Act ("FLSA").

      d.     Based upon the presence of a federal question, CPS timely removed the action to federal court ("federal action");

      e.     Tallman's motion for class certification was denied without prejudice by the federal court and, at Tallman's request, his wage claims arising under Nevada law were remanded to the state court.

      f.     Seven other Plaintiffs (Paul Dreiblatt, Donald Mika, Michael Minor, William Monks, Clifford Nagy, Rafael Vera and John Whittington) timely filed consents to join Tallman's collective action in federal court.

      g.     In March, 2012, Plaintiffs Minor and Monks settled their claims during a Mandatory Settlement Conference.  The federal court entered an order approving the settlement and granting the Parties' Joint Motion to Dismiss the Claims of Minor and Monks on October 15, 2012.  (Docket No. 174).

      h.     The FLSA claims of the six remaining Plaintiffs are pending trial in federal court. Following a further Mandatory Settlement Conference held on June 26, 2013, CPS and the six remaining Plaintiffs have reached an agreement to settle the FLSA claims of all six Plaintiffs.

      i.     CPS disputes and denies that it acted wrongly in any manner toward Plaintiffs in any respect and enters this Agreement in order to avoid further litigation.  All Plaintiffs specifically acknowledge that this Agreement does not constitute an admission of liability by CPS with respect to any matter whatsoever, but that by entering into this Agreement CPS will assume a legal obligation to make certain payments to the Plaintiffs under the conditions, and in the amount, specified in this Agreement.

Settlement Agreement and General Release                                    Page 2

     j.     CPS's agreement to settle is expressly conditioned upon the agreement of all six remaining Plaintiffs to finally settle their FLSA claims. Each Plaintiff expressly agrees and acknowledges that settlement by all remaining Plaintiffs is a condition of the settlement and that CPS's obligations arising from this Agreement shall not be binding if (1) any Plaintiff fails to execute a release of his claims, except as expressly preserved herein; (2) any Plaintiff revokes his consent within 8 days after executing the release; or (3) the Court fails to approve the Settlement Agreement.

3.   <u>Consideration</u>. In consideration of the mutual covenants herein:

     a.     CPS shall pay to Donald Mika the sum of Eighteen Thousand Dollars ($18,000), less required payroll deductions ("Payment"), in full satisfaction of his FLSA claims and all other potential claims except those expressly preserved in this Agreement. Mika shall have the opportunity to submit to CPS, within 10 days following the date the court approves the settlement of the federal action, an IRS W-4 form for use in determining his applicable payroll deductions, which W-4 form CPS shall use to determine those deductions. If Mika fails to do so, CPS shall make those required payroll deductions pursuant to the information it has on file or as otherwise required by law.

     b.     A check made payable to "Donald Mika" shall be delivered to his counsel on or before the 30th day following entry in the federal action of the order by which the Court approves the settlement embodied in this Agreement and the other agreements executed by all remaining Plaintiffs in this action;

     c.     The Payment represents full and final settlement of any and all claims that Mika has made or could have made against CPS and any of its current or former officers, directors, employees, representatives, members, managers, partners, limited partners, administrators, fiduciaries, attorneys, parents, heirs, trustees, subsidiaries, affiliates, divisions, predecessors, successors, assignees, agents, or any of them, and all persons acting by, through, under or in concert with each or any of them (hereafter, collectively, the "Releasees") except for those claims expressly preserved in this Agreement.

     d.     CPS and Plaintiffs shall execute a Stipulation for court approval of the settlement; the form of such Stipulation shall be as in **Exhibit 1**. Upon the court's approval, the FLSA claims asserted in the federal action shall be dismissed with prejudice as to all parties. The Court shall retain jurisdiction (1) to ensure CPS's compliance with its promise to pay the settlement amount; (2) for CPS to re-file its motion for sanctions (including the application for costs and attorney's fees) arising from the mistrial declared on December 12, 2012; and (3) to determine Plaintiffs' motion for reasonable attorney's fees and/or taxation of court costs made pursuant to 29 U.S.C. § 216(b). All such post-settlement motions shall be filed within sixty (60) days following entry of the court's order approving the settlement; provided that the Parties may stipulate to extend this deadline.

    e.    CPS shall issue an IRS Form W-2 to Mika reflecting the gross amount of the wage check paid to him and reflecting the deduction of payroll taxes;

4.   **Release of Known and Unknown Claims.** Except as expressly preserved herein, Mika hereby knowingly and voluntarily releases and forever discharges each of the Releasees from any and all causes of action and claims of any nature whatsoever (hereafter "Claims") which Mika now has or may hereafter have against the Releasees, or any of them, from the beginning of time through the date that the Court approves this Settlement Agreement. The Claims released include, without limitation except as expressly preserved herein ("Preserved Claims"), any claims arising out of or based upon Mika's employment, including, but not limited to, statutory claims, tort claims, contractual claims, and equitable claims.

5.   **Preserved Claims.** This Agreement shall not release any claims Mika possesses for payment of attorney's fees and costs pursuant to 29 U.S.C. 216(b); however, the parties agree those claims can be subsequently released by a court order or by Mika's attorneys. The Parties further agree that Mika shall retain his existing claims arising under Nevada law asserted in the state court action captioned *Donald Mika and Beryl Harter, Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al,* Clark County District Court Case No. A-1255195-C ("*Mika/Harter*"), and any claims he may be entitled to assert, either individually or as a class action participant, in the currently pending actions *Dennis Tallman Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al,* Clark County District Court Case No. A389249 ("*Tallman"*), and *Beryl Harter, Donald Mika and Ronald Simone Individually and on Behalf of Others Similarly Situated v. Christopher Coffey et al,* Clark County District Court Case No. A-12-673852-C   The *Mika/Harter* state court action is currently pending writ review by the Nevada Supreme Court, Case No. 61390, as is the *Tallman* action   The Parties further agree as follows: \

    a.  CPS and Releasees may not and will not assert this settlement as a bar to Mika's foregoing Nevada law claims and may not introduce the fact of this settlement, the Payment, and/or or this Agreement for any purpose in any such state court litigations or any arbitration of the claims made in such state court litigations; provided that

        i.  if a judgment or award is entered in Mika's favor upon those Nevada law claims, CPS and/or Releasees shall be entitled to reduce such judgment by $1.00 for every $1.00 of the gross amount paid to Mika pursuant to this Agreement and advise the court as to the reasons for this reduction if, in the Releasees' good faith judgment, this is needed to effectuate this reduction;

       ii.  if a judgment or award is entered in Mika's favor in those state court litigations or any arbitration of the claims made in such state court litigations, calculation of the amount of prejudgment and/or post-judgment interest, if any, shall be based upon the amount of the judgment less the deduction referenced in Paragraph 5(a)(i) above and this Agreement may

Settlement Agreement and General Release                                Page 4

                    be introduced for that purpose; and

        iii.  the fact of this settlement, this Agreement, and the Payment may be introduced in any legal or arbitration proceeding, motion or application that takes place following the determination on the merits of Tallman's claims and damages, if any, in the state court litigations or in any individual arbitration that involves fees or costs paid or to be paid to any attorney for Tallman or to CPS and/or Releasees in any individual arbitration proceeding and/or any litigation.

    b.  Tallman, either on his own behalf or on behalf of other persons including the members of any class of persons, may not and will not assert or introduce into evidence, in any state court litigations or any arbitration of the claims made in such state court litigations, the fact of the settlement embodied in this Agreement, the terms thereof, and/or this Agreement. .

    c.  In the event either party breaches paragraph 5(a) or 5(b) immediately above, as applicable, in one of the state court lawsuits referenced above, the parties shall advise the court of this Agreement and the opposing party has the right to request the court fashion appropriate relief as is available by law.   In the event such breach takes place during the course of an arbitration proceeding, the non-breaching party shall have the right to have a new arbitrator appointed to hear and determine the parties' dispute.

6. <u>Waiver of Claims under ADEA</u>.  Mika acknowledges that he is waiving and releasing any rights he may have under the Age Discrimination in Employment Act of 1967 ("ADEA") and that this waiver and release is both knowing and voluntary.  Mika and CPS agree that this waiver and release does not apply to any rights or claims that may arise under ADEA after the Effective Date of this Agreement.  Mika acknowledges that the consideration given for this waiver and release is in addition to anything of value to which Mika  was already entitled.  Mika  further acknowledges that he has been advised by this writing that:

    a.    He should consult with an attorney prior to executing this Agreement;

    b.    He has at least twenty-one (21) days within which to consider this Agreement;

    c.    He has at least seven (7) days following the execution of this Agreement by the Parties to revoke the Agreement; and

    d.    This Agreement shall not be effective until the eighth (8th) day after he has executed the Agreement.

Mika may sign this Release and the Agreement prior to the end of the twenty-one (21) day consideration period, thereby commencing the mandatory seven (7) day revocation period. By signing this Release and the Agreement, Mika indicates his decision to waive the twenty-one (21) day consideration period.

7. <u>No Reemployment</u>.  Mika covenants that he will not reapply for employment with CPS or any of the Releasees.  The Parties agree that, should Mika breach this promise and become reemployed by Releasees, this agreement shall constitute cause for immediate dismissal.

8. <u>Unknown Facts or Claims</u>.  Mika expressly acknowledges his understanding there may exist damages or claims in his favor pertaining to the matters released of which he has no knowledge, reason to know or suspicion at the time of execution of the Agreement.  Mika acknowledges further that he may discover facts different from or in addition to those he now knows or believes to be true with respect to the actions of those persons released in Paragraph 4 above [release] prior to the date of the Agreement.  Mika acknowledges the Agreement shall apply to all such unknown and unanticipated damages or claims as well as to those now known or disclosed, and, further, that the Agreement shall remain in full force and effect in all respects notwithstanding any such different or additional facts.

9. <u>Non-Disparagement</u>.  Mika agrees that he will not make any disparaging remarks or statements to anyone regarding CPS or any of the other Releasees.  CPS agrees that no officer or director or human resources department employee of the Company shall make any disparaging remarks or statements regarding Mika.  CPS shall be entitled to confirm the dates of Mika's employment in response to inquiries about his employment but shall not direct or authorize any other communications be made about Mika's employment with CPS. Owing to the size of its business operations, CPS cannot warrant that none of its employees will make communications concerning Mika's employment that it does not direct or authorize and it will not be liable for its failure to prevent such communications. Notwithstanding this provision, the parties shall not be in breach of this section based on the making of any truthful statements under oath if compelled to do so by subpoena or other judicial process.

10. <u>Assumption of Risk</u>.  Each of the Parties fully understands that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by any of the Parties to be true, each of the Parties expressly accepts and assumes the risk of such possible difference in fact and agrees that the release remains effective notwithstanding any such difference in fact.  This Agreement shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating purposes are (for any reason) inaccurate or inappropriate.

11. <u>Effective Date</u>.  The Effective Date of this Agreement shall be date upon which the Court enters an Order Approving this Settlement Agreement and Release.

12. <u>Choice of Law</u>.  This Agreement shall be construed in accordance with, and governed by the laws of the State of Nevada.

13. <u>Integrated Agreement</u>.  This Agreement represents the complete and exclusive statement of the entire settlement agreement between the Parties and supersedes other promises and agreement or any kind, as well as all negotiation and discussions between the Parties hereto and/or their respective legal counsel with respect to the subject matters covered herein.  No

Settlement Agreement and General Release                                    Page 6

other agreements, representations or warranties, express or implied, oral or written have been made by any of the Parties concerning the subject matter of this integrated agreement. The parties may exchange copies of these agreements and sign them on separate copies, the copies so executed and exchanged shall be binding on the parties as if they were a single, originally signed, document.

14. **Confidentiality.** This Agreement shall be lodged with the court for the court's consideration and approval, but the Agreement shall not be filed in any court, except if necessary to enforce its terms or if such filing is compelled by a court order.

Dated: August 13, 2013

_____
William Babcock, CFO
CPS Security (USA), Inc.

Dated: August 7, 2013

_____
Donald Mika

STATE OF NEVADA          )
                         ) ss.
COUNTY OF CLARK          )

On this 7th day of August, 2013, personally appeared before me, a notary public, Donald Mika personally known (or proved) to me to be the person whose name is subscribed to the above instrument, who acknowledged that she executed the above document.

(SEAL)

_____
Notary Public

DANA SNIEGOCKI
Notary Public, State of Nevada
Appointment No. 11-5109-1
My Appt. Expires Jul 1, 2015

<u>Settlement Agreement and Release</u>

1. <u>Parties</u>.     This Settlement Agreement and Release ("Agreement") is entered into by and between Paul Dreiblatt ("Dreiblatt") and CPS Security (USA), Inc.,("CPS") a Nevada corporation;

2. <u>Recitals</u>. This Agreement is entered into with reference to the following facts:

    a.    Dreiblatt was employed by CPS as a security officer;

    b.    On or about April 30, 2009, Dennis Tallman filed in the Nevada District Court for Clark County an action against CPS seeking allegedly unpaid wages;

    c.    Tallman's Complaint asserted a class action pursuant to Nevada law and a collective action pursuant to the federal Fair Labor Standards Act ("FLSA").

    d.    Based upon the presence of a federal question, CPS timely removed the action to federal court ("federal action");

    e.    Tallman's motion for class certification was denied without prejudice by the federal court and, at Tallman's request, his wage claims arising under Nevada law were remanded to the state court.

    f.    Seven other Plaintiffs (Paul Dreiblatt, Donald Mika, Michael Minor, William Monks, Clifford Nagy, Rafael Vera and John Whittington) timely filed consents to join Tallman's collective action in federal court.

    g.    In March, 2012, Plaintiffs Minor and Monks settled their claims during a Mandatory Settlement Conference. The federal court entered an order approving the settlement and granting the Parties' Joint Motion to Dismiss the Claims of Minor and Monks on October 15, 2012. (Docket No. 174).

    h.    The FLSA claims of the six remaining Plaintiffs are pending trial in federal court. Following a further Mandatory Settlement Conference held on June 26, 2013, CPS and the six remaining Plaintiffs have reached an agreement to settle the FLSA claims of all six Plaintiffs.

    i.    CPS disputes and denies that it acted wrongly in any manner toward Plaintiffs in any respect and enters this Agreement in order to avoid further litigation. All Plaintiffs specifically acknowledge that this Agreement does not constitute an admission of liability by CPS with respect to any matter whatsoever, but that by entering into this Agreement CPS will assume a legal obligation to make certain payments to the Plaintiffs under the conditions, and in the amount, specified in this Agreement.

    j.    CPS's agreement to settle is expressly conditioned upon the agreement of all six

remaining Plaintiffs to finally settle their FLSA claims. Each Plaintiff expressly agrees and acknowledges that settlement by all remaining Plaintiffs is a condition of the settlement and that CPS's obligations arising from this Agreement shall not be binding if (1) any Plaintiff fails to execute a release of his claims, except as expressly preserved herein; (2) any Plaintiff revokes his consent within 8 days after executing the release; or (3) the Court fails to approve the Settlement Agreement.

3. <u>Consideration</u>. In consideration of the mutual covenants herein:

    a.    CPS shall pay to Paul Dreiblatt the sum of Twelve Thousand Five Hundred Dollars ($12,500), less required payroll deductions ("Payment"), in full satisfaction of his FLSA claims and all other potential claims except those expressly preserved in this Agreement. Dreiblatt shall have the opportunity to submit to CPS, within 10 days following the date the court approves the settlement of the federal action, an IRS W-4 form for use in determining his applicable payroll deductions, which W-4 form CPS shall use to determine those deductions. If Dreiblatt fails to do so, CPS shall make those required payroll deductions pursuant to the information it has on file or as otherwise required by law.

    b.    A check made payable to "Paul Dreiblatt" shall be delivered to his counsel on or before the 30th day following entry in the federal action of the order by which the Court approves the settlement embodied in this Agreement and the other agreements executed by all remaining Plaintiffs in this action;

    c.    The Payment represents full and final settlement of any and all claims that Dreiblatt has made or could have made against CPS and any of its current or former officers, directors, employees, representatives, members, managers, partners, limited partners, administrators, fiduciaries, attorneys, parents, heirs, trustees, subsidiaries, affiliates, divisions, predecessors, successors, assignees, agents, or any of them, and all persons acting by, through, under or in concert with each or any of them (hereafter, collectively, the "Releasees") except for those claims expressly preserved in this Agreement.

    d.    CPS and Plaintiffs shall execute a Stipulation for court approval of the settlement; the form of such Stipulation shall be as in **Exhibit 1.** Upon the court's approval, the FLSA claims asserted in the federal action shall be dismissed with prejudice as to all parties. The Court shall retain jurisdiction (1) to ensure CPS's compliance with its promise to pay the settlement amount; (2) for CPS to re-file its motion for sanctions (including the application for costs and attorney's fees) arising from the mistrial declared on December 12, 2012; and (3) to determine Plaintiffs' motion for reasonable attorney's fees and/or taxation of court costs made pursuant to 29 U.S.C. § 216(b). All such post-settlement motions shall be filed within sixty (60) days following entry of the court's order approving the settlement; provided that the Parties may stipulate to extend this deadline.

    e.    CPS shall issue an IRS Form W-2 to Dreiblatt reflecting the gross amount of the wage check paid to him and reflecting the deduction of payroll taxes;

4. <u>Release of Known and Unknown Claims</u>.  Except as expressly preserved herein, Dreiblatt hereby knowingly and voluntarily releases and forever discharges each of the Releasees from any and all causes of action and claims of any nature whatsoever (hereafter "Claims") which Dreiblatt now has or may hereafter have against the Releasees, or any of them, from the beginning of time through the date that the Court approves this Settlement Agreement.  The Claims released include, without limitation except as expressly preserved herein ("Preserved Claims"), any claims arising out of or based upon Dreiblatt's employment, including, but not limited to, statutory claims, tort claims, contractual claims, and equitable claims.

5. <u>Preserved Claims.</u>  This Agreement shall not release any claims Dreiblatt possesses for payment of attorney's fees and costs pursuant to 29 U.S.C. 216(b); however, the parties agree those claims can be subsequently released by a court order or by Dreiblatt's attorneys. The Parties further agree that Dreiblatt shall retain his existing claims arising under Nevada law asserted as a class action participant in the state court actions captioned  (1) *Dennis Tallman Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A389249 ("*Tallman");* (2) *Donald Mika and Beryl Harter, Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A-1255195-C ("*Mika/Harter*"), and (3) *Beryl Harter, Donald Mika and Ronald Simone Individually and on Behalf of Others Similarly Situated v. Christopher Coffey et al*, Clark County District Court Case No. A-12-673852-C. ("Harter/Mika/Simone").  The *Mika/Harter* state court action is currently pending writ review by the Nevada Supreme Court, Case No. 61390, as is the *Tallman* action.  The Parties further agree as follows:

    a.    CPS and Releasees may not and will not assert this settlement as a bar to Dreiblatt's foregoing Nevada law  claims and may not introduce the fact of this settlement, the Payment, and/or this Agreement  for any purpose in any such state court litigations or any arbitration of the claims made in such state court litigations; provided that

        i.    if a judgment or award is entered in Dreiblatt's favor upon those Nevada law claims, CPS and/or Releasees shall be entitled to reduce such judgment by $1.00 for every $1.00 of the gross amount  paid to Dreiblatt pursuant to this Agreement and advise the court as to the reasons for this reduction if, in the Releasees' good faith judgment, this is needed to effectuate this reduction;

        ii.    if a judgment or award is entered in Dreiblatt's favor in those state court litigations or any arbitration of the claims made in such state court litigations, calculation of the amount of prejudgment and/or post-judgment interest, if any, shall be based upon the amount of the judgment less the deduction referenced in Paragraph 5(a)(i) above and this Agreement may

Settlement Agreement and General Release                                      Page 4

        be introduced for that purpose; and

        iii.  the fact of this settlement, this Agreement, and the Payment may be introduced in any legal or arbitration proceeding, motion or application that takes place following the determination on the merits of Dreiblatt's claims and damages, if any, in the state court litigations or in any individual arbitration that involves fees or costs paid or to be paid to any attorney for Dreiblatt or to CPS and/or Releasees in any individual arbitration proceeding and/or any litigation.

    b.  Dreiblatt, either on his own behalf or on behalf of other persons including the members of any class of persons, may not and will not assert or introduce into evidence, in any state court litigations or any arbitration of the claims made in such state court litigations, the fact of the settlement embodied in this Agreement, the terms thereof, and/or this Agreement. .

    c.  In the event either party breaches paragraph 5(a) or 5(b) immediately above, as applicable, in one of the state court lawsuits referenced above, the parties shall advise the court of this Agreement and the opposing party has the right to request the court fashion appropriate relief as is available by law.  In the event such breach takes place during the course of an arbitration proceeding, the non-breaching party shall have the right to have a new arbitrator appointed to hear and determine the parties' dispute.

6.  <u>Waiver of Claims under ADEA</u>.  Dreiblatt acknowledges that he is waiving and releasing any rights he may have under the Age Discrimination in Employment Act of 1967 ("ADEA") and that this waiver and release is both knowing and voluntary.  Dreiblatt and CPS agree that this waiver and release does not apply to any rights or claims that may arise under ADEA after the Effective Date of this Agreement.  Dreiblatt acknowledges that the consideration given for this waiver and release is in addition to anything of value to which Dreiblatt was already entitled.  Dreiblatt further acknowledges that he has been advised by this writing that:

    a.  He should consult with an attorney prior to executing this Agreement;

    b.  He has at least twenty-one (21) days within which to consider this Agreement;

    c.  He has at least seven (7) days following the execution of this Agreement by the Parties to revoke the Agreement; and

    d.  This Agreement shall not be effective until the eighth (8th) day after he has executed the Agreement.

Dreiblatt may sign this Release and the Agreement prior to the end of the twenty-one (21) day consideration period, thereby commencing the mandatory seven (7) day revocation period.  By signing this Release and the Agreement, Dreiblatt indicates his decision to waive the twenty-one (21) day consideration period.

7. <u>No Reemployment</u>.  Dreiblatt covenants that he will not reapply for employment with CPS or any of the Releasees.  The Parties agree that, should Dreiblatt breach this promise and become reemployed by Releasees, this agreement shall constitute cause for immediate dismissal.

8. <u>Unknown Facts or Claims</u>.  Dreiblatt expressly acknowledges his understanding there may exist damages or claims in his favor pertaining to the matters released of which he has no knowledge, reason to know or suspicion at the time of execution of the Agreement.  Dreiblatt acknowledges further that he may discover facts different from or in addition to those he now knows or believes to be true with respect to the actions of those persons released in Paragraph 4 above [release] prior to the date of the Agreement.  Dreiblatt acknowledges the Agreement shall apply to all such unknown and unanticipated damages or claims as well as to those now known or disclosed, and, further, that the Agreement shall remain in full force and effect in all respects notwithstanding any such different or additional facts.

9. <u>Non-Disparagement</u>.  Dreiblatt agrees that he will not make any disparaging remarks or statements to anyone regarding CPS or any of the other Releasees.  CPS agrees that no officer or director or human resources department employee of the Company shall make any disparaging remarks or statements regarding Dreiblatt.  CPS shall be entitled to confirm the dates of Dreiblatt's employment in response to inquiries about his employment but shall not direct or authorize any other communications be made about Dreiblatt's employment with CPS.  Owing to the size of its business operations, CPS cannot warrant that none of its employees will make communications concerning Dreiblatt's employment that it does not direct or authorize and it will not be liable for its failure to prevent such communications.  Notwithstanding this provision, the parties shall not be in breach of this section based on the making of any truthful statements under oath if compelled to do so by subpoena or other judicial process.

10. <u>Assumption of Risk</u>.  Each of the Parties fully understands that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by any of the Parties to be true, each of the Parties expressly accepts and assumes the risk of such possible difference in fact and agrees that the release remains effective notwithstanding any such difference in fact.  This Agreement shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating purposes are (for any reason) inaccurate or inappropriate.

11. <u>Effective Date</u>.  The Effective Date of this Agreement shall be date upon which the Court enters an Order Approving this Settlement Agreement and Release.

12. <u>Choice of Law</u>.  This Agreement shall be construed in accordance with, and governed by the laws of the State of Nevada.

13. <u>Integrated Agreement</u>.  This Agreement represents the complete and exclusive statement of the entire settlement agreement between the Parties and supersedes other promises and agreement or any kind, as well as all negotiation and discussions between the Parties hereto

Settlement Agreement and General Release                                    Page 6

and/or their respective legal counsel with respect to the subject matters covered herein.  No other agreements, representations or warranties, express or implied, oral or written have been made by any of the Parties concerning the subject matter of this integrated agreement.  The parties may exchange copies of these agreements and sign them on separate copies, the copies so executed and exchanged shall be binding on the parties as if they were a single, originally signed, document.

14.  Confidentiality.  This Agreement shall be lodged with the court for the court's consideration and approval, but the Agreement shall not be filed in any court, except if necessary to enforce its terms or if such filing is compelled by a court order.


Dated: August 13, 2013                          _____
                                                William Babcock, CFO
                                                CPS Security (USA), Inc.



Dated: August 5, 2013                           _____
                                                Paul Dreiblatt




STATE OF NEVADA        )
                       ) ss.
COUNTY OF CLARK        )

    On this 5th day of August, 2013, personally appeared before me, a notary public, Paul Dreiblatt personally known (or proved) to me to be the person whose name is subscribed to the above instrument, who acknowledged that she executed the above document.

        (SEAL)

                                                _____
                                                Notary Public

DANA SNIEGOCKI
Notary Public, State of Nevada
Appointment No. 11-5109-1
My Appt. Expires Jul 1, 2015

### Settlement Agreement and Release

1. <u>Parties</u>.     This Settlement Agreement and Release ("Agreement") is entered into by and between Dennis Tallman ("Tallman") and CPS Security (USA), Inc.,("CPS") a Nevada corporation;

2. <u>Recitals</u>. This Agreement is entered into with reference to the following facts:

   a.     Tallman was employed by CPS as a security officer;

   b.     On or about April 30, 2009, Tallman filed in the Nevada District Court for Clark County an action against CPS seeking allegedly unpaid wages;

   c.     Tallman's Complaint asserted a class action pursuant to Nevada law and a collective action pursuant to the federal Fair Labor Standards Act ("FLSA").

   d.     Based upon the presence of a federal question, CPS timely removed the action to federal court ("federal action");

   e.     Tallman's motion for class certification was denied without prejudice by the federal court and, at Tallman's request, his wage claims arising under Nevada law were remanded to the state court.

   f.     Seven other Plaintiffs (Paul Dreiblatt, Donald Mika, Michael Minor, William Monks, Clifford Nagy, Rafael Vera and John Whittington) timely filed consents to join Tallman's collective action in federal court.

   g.     In March, 2012, Plaintiffs Minor and Monks settled their claims during a Mandatory Settlement Conference.  The federal court entered an order approving the settlement and granting the Parties' Joint Motion to Dismiss the Claims of Minor and Monks on October 15, 2012.  (Docket No. 174).

   h.     The FLSA claims of the six remaining Plaintiffs are pending trial in federal court. Following a further Mandatory Settlement Conference held on June 26, 2013, CPS and the six remaining Plaintiffs have reached an agreement to settle the FLSA claims of all six Plaintiffs.

   i.     CPS disputes and denies that it acted wrongly in any manner toward Plaintiffs in any respect and enters this Agreement in order to avoid further litigation.  All Plaintiffs specifically acknowledge that this Agreement does not constitute an admission of liability by CPS with respect to any matter whatsoever, but that by entering into this Agreement CPS will assume a legal obligation to make certain payments to the Plaintiffs under the conditions, and in the amount, specified in this Agreement.

      j.      CPS's agreement to settle is expressly conditioned upon the agreement of all six remaining Plaintiffs to finally settle their FLSA claims. Each Plaintiff expressly agrees and acknowledges that settlement by all remaining Plaintiffs is a condition of the settlement and that CPS's obligations arising from this Agreement shall not be binding if (1) any Plaintiff fails to execute a release of his claims, except as expressly preserved herein; (2) any Plaintiff revokes his consent within 8 days after executing the release; or (3) the Court fails to approve the Settlement Agreement.

3.   <u>Consideration</u>. In consideration of the mutual covenants herein:

      a.      CPS shall pay to Dennis Tallman the sum of Thirty Thousand Dollars ($30,000), less required payroll deductions ("Payment"), in full satisfaction of his FLSA claims and all other potential claims except those expressly preserved in this Agreement. Tallman shall have the opportunity to submit to CPS, within 10 days following the date the court approves the settlement of the federal action, an IRS W-4 form for use in determining his applicable payroll deductions, which W-4 form CPS shall use to determine those deductions. If Tallman fails to do so, CPS shall make those required payroll deductions pursuant to the information it has on file or as otherwise required by law.

      b.      A check made payable to "Dennis Tallman" shall be delivered to his counsel on or before the 30th day following entry in the federal action of the order by which the Court approves the settlement embodied in this Agreement and the other agreements executed by all remaining Plaintiffs in this action;

      c.      The Payment represents full and final settlement of any and all claims that Tallman has made or could have made against CPS and any of its current or former officers, directors, employees, representatives, members, managers, partners, limited partners, administrators, fiduciaries, attorneys, parents, heirs, trustees, subsidiaries, affiliates, divisions, predecessors, successors, assignees, agents, or any of them, and all persons acting by, through, under or in concert with each or any of them (hereafter, collectively, the "Releasees") except for those claims expressly preserved in this Agreement.

      d.      CPS and Plaintiffs shall execute a Stipulation for court approval of the settlement; the form of such Stipulation shall be as in **Exhibit 1**. Upon the court's approval, the FLSA claims asserted in the federal action shall be dismissed with prejudice as to all parties. The Court shall retain jurisdiction (1) to ensure CPS's compliance with its promise to pay the settlement amount; (2) for CPS to re-file its motion for sanctions (including the application for costs and attorney's fees) arising from the mistrial declared on December 12, 2012; and (3) to determine Plaintiffs' motion for reasonable attorney's fees and/or taxation of court costs made pursuant to 29 U.S.C. § 216(b). All such post-settlement motions shall be filed within sixty (60) days following entry of the court's order approving the settlement; provided that the Parties may stipulate to extend this deadline.

e.    CPS shall issue an IRS Form W-2 to Tallman reflecting the gross amount of the wage check paid to him and reflecting the deduction of payroll taxes;

4.   <u>Release of Known and Unknown Claims</u>.  Except as expressly preserved herein, Tallman hereby knowingly and voluntarily releases and forever discharges each of the Releasees from any and all causes of action and claims of any nature whatsoever (hereafter "Claims") which Tallman now has or may hereafter have against the Releasees, or any of them, from the beginning of time through the date that the Court approves this Settlement Agreement.  The Claims released include, without limitation except as expressly preserved herein ("Preserved Claims"), any claims arising out of or based upon Tallman's employment, including, but not limited to, statutory claims, tort claims, contractual claims, and equitable claims.

5.   <u>Preserved Claims.</u>  This Agreement shall not release any claims Tallman possesses for payment of attorney's fees and costs pursuant to 29 U.S.C. 216(b); however, the parties agree those claims can be subsequently released by a court order or by Tallman's attorneys. The Parties further agree that Tallman shall retain his existing claims arising under Nevada law asserted in the state court action captioned *Dennis Tallman, Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A389249, and any claims he may be entitled to assert, either individually or as a class action participant, in the currently pending actions *Donald Mika and Beryl Harter, Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A-12655195-C (*"Mika and Harter"*), and *Beryl Harter, Donald Mika and Ronald Simone Individually and on Behalf of Others Similarly Situated v. Christopher Coffey et al*, Clark County District Court Case No. A-12-673852-C Tallman's state court action is currently pending writ review by the Nevada Supreme Court, Case No. 60673, as is the *Mika and Harter* action  The Parties further agree as follows: \

a.    CPS and Releasees may not and will not assert this settlement as a bar to Tallman's foregoing Nevada law  claims and may not introduce the fact of this settlement, the Payment, and/or or this Agreement  for any purpose in any such state court litigations or any arbitration of the claims made in such state court litigations; provided that

i.    if a judgment or award is entered in Tallman's favor upon those Nevada law claims, CPS and/or Releasees shall be entitled to reduce such judgment by $1.00 for every $1.00 of the gross amount  paid to Tallman pursuant to this Agreement and advise the court as to the reasons for this reduction if, in the Releasees' good faith judgment, this is needed to effectuate this reduction;

ii.   if a judgment or award is entered in Tallman's favor in those state court litigations or any arbitration of the claims made in such state court litigations, calculation of the amount of prejudgment and/or post-judgment interest, if any, shall be based upon the amount of the judgment less the deduction referenced in Paragraph 5(a)(i) above and this Agreement may

Settlement Agreement and General Release                                                    Page 4

be introduced for that purpose; and

iii.   the fact of this settlement, this Agreement, and the Payment may be
       introduced in any legal or arbitration proceeding, motion or application
       that takes place following the determination on the merits of Tallman's
       claims and damages, if any, in the state court litigations or in any
       individual arbitration that involves fees or costs paid or to be paid to any
       attorney for Tallman or to CPS and/or Releasees in any individual
       arbitration proceeding and/or any litigation.

b.   Tallman, either on his own behalf or on behalf of other persons including the
     members of any class of persons, may not and will not assert or introduce into
     evidence, in any state court litigations or any arbitration of the claims made in
     such state court litigations, the fact of the settlement embodied in this Agreement,
     the terms thereof, and/or this Agreement. .

c.   In the event either party breaches paragraph 5(a) or 5(b) immediately above, as
     applicable, in one of the state court lawsuits referenced above, the parties shall
     advise the court of this Agreement and the opposing party has the right to request
     the court fashion appropriate relief as is available by law.   In the event such
     breach takes place during the course of an arbitration proceeding, the non-
     breaching party shall have the right to have a new arbitrator appointed to hear and
     determine the parties' dispute.

6.   <u>Waiver of Claims under ADEA</u>.  Tallman acknowledges that he is waiving and releasing any
     rights he may have under the Age Discrimination in Employment Act of 1967 ("ADEA") and
     that this waiver and release is both knowing and voluntary.  Tallman and CPS agree that this
     waiver and release does not apply to any rights or claims that may arise under ADEA after
     the Effective Date of this Agreement.  Tallman acknowledges that the consideration given for
     this waiver and release is in addition to anything of value to which Tallman was already
     entitled.  Tallman further acknowledges that he has been advised by this writing that:

     a.   He should consult with an attorney prior to executing this Agreement;

     b.   He has at least twenty-one (21) days within which to consider this Agreement;

     c.   He has at least seven (7) days following the execution of this Agreement by the
          Parties to revoke the Agreement; and

     d.   This Agreement shall not be effective until the eighth (8th) day after he has
          executed the Agreement.

Tallman may sign this Release and the Agreement prior to the end of the twenty-one (21) day
consideration period, thereby commencing the mandatory seven (7) day revocation period.
By signing this Release and the Agreement, Tallman indicates his decision to waive the
twenty-one (21) day consideration period.

7. <u>No Reemployment</u>. Tallman covenants that he will not reapply for employment with CPS or any of the Releasees. The Parties agree that, should Tallman breach this promise and become reemployed by Releasees, this agreement shall constitute cause for immediate dismissal.

8. <u>Unknown Facts or Claims</u>. Tallman expressly acknowledges his understanding there may exist damages or claims in his favor pertaining to the matters released of which he has no knowledge, reason to know or suspicion at the time of execution of the Agreement. Tallman acknowledges further that he may discover facts different from or in addition to those he now knows or believes to be true with respect to the actions of those persons released in Paragraph 4 above [release] prior to the date of the Agreement. Tallman acknowledges the Agreement shall apply to all such unknown and unanticipated damages or claims as well as to those now known or disclosed, and, further, that the Agreement shall remain in full force and effect in all respects notwithstanding any such different or additional facts.

9. <u>Non-Disparagement</u>. Tallman agrees that he will not make any disparaging remarks or statements to anyone regarding CPS or any of the other Releasees. CPS agrees that no officer or director or human resources department employee of the Company shall make any disparaging remarks or statements regarding Tallman. CPS shall be entitled to confirm the dates of Tallman's employment in response to inquiries about his employment but shall not direct or authorize any other communications be made about Tallman's employment with CPS. Owing to the size of its business operations, CPS cannot warrant that none of its employees will make communications concerning Tallman's employment that it does not direct or authorize and it will not be liable for its failure to prevent such communications. Notwithstanding this provision, the parties shall not be in breach of this section based on the making of any truthful statements under oath if compelled to do so by subpoena or other judicial process.

10. <u>Assumption of Risk</u>. Each of the Parties fully understands that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by any of the Parties to be true, each of the Parties expressly accepts and assumes the risk of such possible difference in fact and agrees that the release remains effective notwithstanding any such difference in fact. This Agreement shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating purposes are (for any reason) inaccurate or inappropriate.

11. <u>Effective Date</u>. The Effective Date of this Agreement shall be date upon which the Court enters an Order Approving this Settlement Agreement and Release.

12. <u>Choice of Law</u>. This Agreement shall be construed in accordance with, and governed by the laws of the State of Nevada.

13. <u>Integrated Agreement</u>. This Agreement represents the complete and exclusive statement of the entire settlement agreement between the Parties and supersedes other promises and agreement or any kind, as well as all negotiation and discussions between the Parties hereto

Settlement Agreement and General Release                                    Page 6

and/or their respective legal counsel with respect to the subject matters covered herein.  No
other agreements, representations or warranties, express or implied, oral or written have been
made by any of the Parties concerning the subject matter of this integrated agreement.  The
parties may exchange copies of these agreements and sign them on separate copies, the
copies so executed and exchanged shall be binding on the parties as if they were a single,
originally signed, document.

14.  Confidentiality.  This Agreement shall be lodged with the court for the court's consideration
and approval, but the Agreement shall not be filed in any court, except if necessary to enforce
its terms or if such filing is compelled by a court order.


Dated: August 13, 2013

_____
William Babcock, CFO
CPS Security (USA), Inc.


Dated: August 2, 2013

_____
Dennis Tallman


STATE OF NEVADA      )
                     ) ss.
COUNTY OF CLARK      )

On this 2nd day of August, 2013, personally appeared before me, a notary
public, Dennis Tallman personally known (or proved) to me to be the person whose name is
subscribed to the above instrument, who acknowledged that she executed the above document.

(SEAL)

_____
Notary Public

DANA SNIEGOCKI
Notary Public, State of Nevada
Appointment No. 11-5109-1
My Appt. Expires Jul 1, 2015

### Settlement Agreement and Release

1. <u>Parties</u>.    This Settlement Agreement and Release ("Agreement") is entered into by and between Clifford Nagy ("Nagy") and CPS Security (USA), Inc.,("CPS") a Nevada corporation;

2. <u>Recitals</u>.  This Agreement is entered into with reference to the following facts:

    a.    Nagy was employed by CPS as a security officer;

    b.    On or about April 30, 2009, Dennis Tallman filed in the Nevada District Court for Clark County an action against CPS seeking allegedly unpaid wages;

    c.    Tallman's Complaint asserted a class action pursuant to Nevada law and a collective action pursuant to the federal Fair Labor Standards Act ("FLSA").

    d.    Based upon the presence of a federal question, CPS timely removed the action to federal court ("federal action");

    e.    Tallman's motion for class certification was denied without prejudice by the federal court and, at Tallman's request, his wage claims arising under Nevada law were remanded to the state court.

    f.    Seven other Plaintiffs (Paul Dreiblatt, Donald Mika, Michael Minor, William Monks, Clifford Nagy, Rafael Vera and John Whittington) timely filed consents to join Tallman's collective action in federal court.

    g.    In March, 2012, Plaintiffs Minor and Monks settled their claims during a Mandatory Settlement Conference.  The federal court entered an order approving the settlement and granting the Parties' Joint Motion to Dismiss the Claims of Minor and Monks on October 15, 2012.  (Docket No. 174).

    h.    The FLSA claims of the six remaining Plaintiffs are pending trial in federal court. Following a further Mandatory Settlement Conference held on June 26, 2013, CPS and the six remaining Plaintiffs have reached an agreement to settle the FLSA claims of all six Plaintiffs.

    i.    CPS disputes and denies that it acted wrongly in any manner toward Plaintiffs in any respect and enters this Agreement in order to avoid further litigation.  All Plaintiffs specifically acknowledge that this Agreement does not constitute an admission of liability by CPS with respect to any matter whatsoever, but that by entering into this Agreement CPS will assume a legal obligation to make certain payments to the Plaintiffs under the conditions, and in the amount, specified in this Agreement.

j.     CPS's agreement to settle is expressly conditioned upon the agreement of all six remaining Plaintiffs to finally settle their FLSA claims. Each Plaintiff expressly agrees and acknowledges that settlement by all remaining Plaintiffs is a condition of the settlement and that CPS's obligations arising from this Agreement shall not be binding if (1) any Plaintiff fails to execute a release of his claims, except as expressly preserved herein; (2) any Plaintiff revokes his consent within 8 days after executing the release; or (3) the Court fails to approve the Settlement Agreement.

3.   **Consideration.** In consideration of the mutual covenants herein:

a.     CPS shall pay to Clifford Nagy the sum of Fifteen Thousand Dollars ($15,000), less required payroll deductions ("Payment"), in full satisfaction of his FLSA claims and all other potential claims except those expressly preserved in this Agreement. Nagy shall have the opportunity to submit to CPS, within 10 days following the date the court approves the settlement of the federal action, an IRS W-4 form for use in determining his applicable payroll deductions, which W-4 form CPS shall use to determine those deductions. If Nagy fails to do so, CPS shall make those required payroll deductions pursuant to the information it has on file or as otherwise required by law.

b.     A check made payable to "Clifford Nagy" shall be delivered to his counsel on or before the 30th day following entry in the federal action of the order by which the Court approves the settlement embodied in this Agreement and the other agreements executed by all remaining Plaintiffs in this action;

c.     The Payment represents full and final settlement of any and all claims that Nagy has made or could have made against CPS and any of its current or former officers, directors, employees, representatives, members, managers, partners, limited partners, administrators, fiduciaries, attorneys, parents, heirs, trustees, subsidiaries, affiliates, divisions, predecessors, successors, assignees, agents, or any of them, and all persons acting by, through, under or in concert with each or any of them (hereafter, collectively, the "Releasees") except for those claims expressly preserved in this Agreement.

d.     CPS and Plaintiffs shall execute a Stipulation for court approval of the settlement; the form of such Stipulation shall be as in **Exhibit 1.** Upon the court's approval, the FLSA claims asserted in the federal action shall be dismissed with prejudice as to all parties. The Court shall retain jurisdiction (1) to ensure CPS's compliance with its promise to pay the settlement amount; (2) for CPS to re-file its motion for sanctions (including the application for costs and attorney's fees) arising from the mistrial declared on December 12, 2012; and (3) to determine Plaintiffs' motion for reasonable attorney's fees and/or taxation of court costs made pursuant to 29 U.S.C. § 216(b). All such post-settlement motions shall be filed within sixty (60) days following entry of the court's order approving the settlement; provided that the Parties may stipulate to extend this deadline.

e.  CPS shall issue an IRS Form W-2 to Nagy reflecting the gross amount of the wage check paid to him and reflecting the deduction of payroll taxes;

4.  <u>Release of Known and Unknown Claims.</u>  Except as expressly preserved herein, Nagy hereby knowingly and voluntarily releases and forever discharges each of the Releasees from any and all causes of action and claims of any nature whatsoever (hereafter "Claims") which Nagy now has or may hereafter have against the Releasees, or any of them, from the beginning of time through the date that the Court approves this Settlement Agreement.  The Claims released include, without limitation except as expressly preserved herein ("Preserved Claims"), any claims arising out of or based upon Nagy's employment, including, but not limited to, statutory claims, tort claims, contractual claims, and equitable claims.

5.  <u>Preserved Claims.</u>  This Agreement shall not release any claims Nagy possesses for payment of attorney's fees and costs pursuant to 29 U.S.C. 216(b); however, the parties agree those claims can be subsequently released by a court order or by Nagy's attorneys. The Parties further agree that Nagy shall retain his existing claims arising under Nevada law asserted as a class action participant in the state court actions captioned  (1) *Dennis Tallman Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A389249 ("*Tallman*"); (2) *Donald Mika and Beryl Harter, Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A-1255195-C ("*Mika/Harter*"), and (3)  *Beryl Harter, Donald Mika and Ronald Simone Individually and on Behalf of Others Similarly Situated v. Christopher Coffey et al*, Clark County District Court Case No. A-12-673852-C. ("Harter/Mika/Simone").  The *Mika/Harter* state court action is currently pending writ review by the Nevada Supreme Court, Case No. 61390, as is the *Tallman* action.  The Parties further agree as follows:

a.  CPS and Releasees may not and will not assert this settlement as a bar to Nagy's foregoing Nevada law  claims and may not introduce the fact of this settlement, the Payment, and/or this Agreement  for any purpose in any such state court litigations or any arbitration of the claims made in such state court litigations; provided that

i.  if a judgment or award is entered in Nagy's favor upon those Nevada law claims, CPS and/or Releasees shall be entitled to reduce such judgment by $1.00 for every $1.00 of the gross amount  paid to Nagy pursuant to this Agreement and advise the court as to the reasons for this reduction if, in the Releasees' good faith judgment, this is needed to effectuate this reduction;

ii.  if a judgment or award is entered in Nagy's favor in those state court litigations or any arbitration of the claims made in such state court litigations, calculation of the amount of prejudgment and/or post-judgment interest, if any, shall be based upon the amount of the judgment less the deduction referenced in Paragraph 5(a)(i) above and this Agreement may

be introduced for that purpose; and

    iii.   the fact of this settlement, this Agreement, and the Payment may be introduced in any legal or arbitration proceeding, motion or application that takes place following the determination on the merits of Nagy's claims and damages, if any, in the state court litigations or in any individual arbitration that involves fees or costs paid or to be paid to any attorney for Nagy or to CPS and/or Releasees in any individual arbitration proceeding and/or any litigation.

    b.   Nagy, either on his own behalf or on behalf of other persons including the members of any class of persons, may not and will not assert or introduce into evidence, in any state court litigations or any arbitration of the claims made in such state court litigations, the fact of the settlement embodied in this Agreement, the terms thereof, and/or this Agreement. .

    c.   In the event either party breaches paragraph 5(a) or 5(b) immediately above, as applicable, in one of the state court lawsuits referenced above, the parties shall advise the court of this Agreement and the opposing party has the right to request the court fashion appropriate relief as is available by law.   In the event such breach takes place during the course of an arbitration proceeding, the non-breaching party shall have the right to have a new arbitrator appointed to hear and determine the parties' dispute.

6.   <u>Waiver of Claims under ADEA.</u>  Nagy acknowledges that he is waiving and releasing any rights he may have under the Age Discrimination in Employment Act of 1967 ("ADEA") and that this waiver and release is both knowing and voluntary.  Nagy and CPS agree that this waiver and release does not apply to any rights or claims that may arise under ADEA after the Effective Date of this Agreement.  Nagy acknowledges that the consideration given for this waiver and release is in addition to anything of value to which Nagy was already entitled.  Nagy  further acknowledges that he has been advised by this writing that:

    a.   He should consult with an attorney prior to executing this Agreement;

    b.   He has at least twenty-one (21) days within which to consider this Agreement;

    c.   He has at least seven (7) days following the execution of this Agreement by the Parties to revoke the Agreement; and

    d.   This Agreement shall not be effective until the eighth (8th) day after he has executed the Agreement.

Nagy may sign this Release and the Agreement prior to the end of the twenty-one (21) day consideration period, thereby commencing the mandatory seven (7) day revocation period. By signing this Release and the Agreement, Nagy indicates his decision to waive the twenty-one (21) day consideration period.

7. <u>No Reemployment</u>.  Nagy covenants that he will not reapply for employment with CPS or any of the Releasees.  The Parties agree that, should Nagy breach this promise and become reemployed by Releasees, this agreement shall constitute cause for immediate dismissal.

8. <u>Unknown Facts or Claims</u>.  Nagy expressly acknowledges his understanding there may exist damages or claims in his favor pertaining to the matters released of which he has no knowledge, reason to know or suspicion at the time of execution of the Agreement.  Nagy acknowledges further that he may discover facts different from or in addition to those he now knows or believes to be true with respect to the actions of those persons released in Paragraph 4 above [release] prior to the date of the Agreement.  Nagy acknowledges the Agreement shall apply to all such unknown and unanticipated damages or claims as well as to those now known or disclosed, and, further, that the Agreement shall remain in full force and effect in all respects notwithstanding any such different or additional facts.

9. <u>Non-Disparagement</u>.  Nagy agrees that he will not make any disparaging remarks or statements to anyone regarding CPS or any of the other Releasees.  CPS agrees that no officer or director or human resources department employee of the Company shall make any disparaging remarks or statements regarding Nagy.  CPS shall be entitled to confirm the dates of Nagy's employment in response to inquiries about his employment but shall not direct or authorize any other communications be made about Nagy's employment with CPS.  Owing to the size of its business operations, CPS cannot warrant that none of its employees will make communications concerning Nagy's employment that it does not direct or authorize and it will not be liable for its failure to prevent such communications.  Notwithstanding this provision, the parties shall not be in breach of this section based on the making of any truthful statements under oath if compelled to do so by subpoena or other judicial process.

10. <u>Assumption of Risk</u>.  Each of the Parties fully understands that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by any of the Parties to be true, each of the Parties expressly accepts and assumes the risk of such possible difference in fact and agrees that the release remains effective notwithstanding any such difference in fact.  This Agreement shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating purposes are (for any reason) inaccurate or inappropriate.

11. <u>Effective Date</u>.  The Effective Date of this Agreement shall be date upon which the Court enters an Order Approving this Settlement Agreement and Release.

12. <u>Choice of Law</u>.  This Agreement shall be construed in accordance with, and governed by the laws of the State of Nevada.

13. <u>Integrated Agreement</u>.  This Agreement represents the complete and exclusive statement of the entire settlement agreement between the Parties and supersedes other promises and agreement or any kind, as well as all negotiation and discussions between the Parties hereto and/or their respective legal counsel with respect to the subject matters covered herein.  No

Settlement Agreement and General Release                                    Page 6

other agreements, representations or warranties, express or implied, oral or written have been
made by any of the Parties concerning the subject matter of this integrated agreement. The
parties may exchange copies of these agreements and sign them on separate copies, the
copies so executed and exchanged shall be binding on the parties as if they were a single,
originally signed, document.

14. Confidentiality. This Agreement shall be lodged with the court for the court's consideration
and approval, but the Agreement shall not be filed in any court, except if necessary to enforce
its terms or if such filing is compelled by a court order.

Dated: August _13_, 2013

_____
William Babcock, CFO
CPS Security (USA), Inc.

Dated: August _5_, 2013

_____
Clifford Nagy

STATE OF NEVADA          )
                         ) ss.
COUNTY OF CLARK          )

        On this _5th_ day of _August_____, 2013, personally appeared before me, a notary
public, Clifford Nagy personally known (or proved) to me to be the person whose name is
subscribed to the above instrument, who acknowledged that she executed the above document.

        (SEAL)

_____
Notary Public

DANA SNIEGOCKI
Notary Public, State of Nevada
Appointment No. 11-5109-1
My Appt. Expires Jul 1, 2015

## Settlement Agreement and Release

1. <u>Parties.</u>    This Settlement Agreement and Release ("Agreement") is entered into by and between John Whittington ("Whittington") and CPS Security (USA), Inc.,("CPS") a Nevada corporation;

2. <u>Recitals.</u> This Agreement is entered into with reference to the following facts:

   a.    Whittington was employed by CPS as a security officer;

   b.    On or about April 30, 2009, Dennis Tallman filed in the Nevada District Court for Clark County an action against CPS seeking allegedly unpaid wages;

   c.    Tallman's Complaint asserted a class action pursuant to Nevada law and a collective action pursuant to the federal Fair Labor Standards Act ("FLSA").

   d.    Based upon the presence of a federal question, CPS timely removed the action to federal court ("federal action");

   e.    Tallman's motion for class certification was denied without prejudice by the federal court and, at Tallman's request, his wage claims arising under Nevada law were remanded to the state court.

   f.    Seven other Plaintiffs (Paul Dreiblatt, Donald Mika, Michael Minor, William Monks, Clifford Nagy, Rafael Vera and John Whittington) timely filed consents to join Tallman's collective action in federal court.

   g.    In March, 2012, Plaintiffs Minor and Monks settled their claims during a Mandatory Settlement Conference. The federal court entered an order approving the settlement and granting the Parties' Joint Motion to Dismiss the Claims of Minor and Monks on October 15, 2012. (Docket No. 174).

   h.    The FLSA claims of the six remaining Plaintiffs are pending trial in federal court. Following a further Mandatory Settlement Conference held on June 26, 2013, CPS and the six remaining Plaintiffs have reached an agreement to settle the FLSA claims of all six Plaintiffs.

   i.    CPS disputes and denies that it acted wrongly in any manner toward Plaintiffs in any respect and enters this Agreement in order to avoid further litigation. All Plaintiffs specifically acknowledge that this Agreement does not constitute an admission of liability by CPS with respect to any matter whatsoever, but that by entering into this Agreement CPS will assume a legal obligation to make certain payments to the Plaintiffs under the conditions, and in the amount, specified in this Agreement.

   j.    CPS's agreement to settle is expressly conditioned upon the agreement of all six

remaining Plaintiffs to finally settle their FLSA claims. Each Plaintiff expressly agrees and acknowledges that settlement by all remaining Plaintiffs is a condition of the settlement and that CPS's obligations arising from this Agreement shall not be binding if (1) any Plaintiff fails to execute a release of his claims, except as expressly preserved herein; (2) any Plaintiff revokes his consent within 8 days after executing the release; or (3) the Court fails to approve the Settlement Agreement.

3.  <u>Consideration</u>. In consideration of the mutual covenants herein:

    a.  CPS shall pay to John Whittington the sum of Thirty-One Thousand Eight Hundred Dollars ($31,800), less required payroll deductions ("Payment"), in full satisfaction of his FLSA claims and all other potential claims except those expressly preserved in this Agreement. Whittington shall have the opportunity to submit to CPS, within 10 days following the date the court approves the settlement of the federal action, an IRS W-4 form for use in determining his applicable payroll deductions, which W-4 form CPS shall use to determine those deductions. If Whittington fails to do so, CPS shall make those required payroll deductions pursuant to the information it has on file or as otherwise required by law.

    b.  A check made payable to "John Whittington" shall be delivered to his counsel on or before the 30th day following entry in the federal action of the order by which the Court approves the settlement embodied in this Agreement and the other agreements executed by all remaining Plaintiffs in this action;

    c.  The Payment represents full and final settlement of any and all claims that Whittington has made or could have made against CPS and any of its current or former officers, directors, employees, representatives, members, managers, partners, limited partners, administrators, fiduciaries, attorneys, parents, heirs, trustees, subsidiaries, affiliates, divisions, predecessors, successors, assignees, agents, or any of them, and all persons acting by, through, under or in concert with each or any of them (hereafter, collectively, the "Releasees") except for those claims expressly preserved in this Agreement.

    d.  CPS and Plaintiffs shall execute a Stipulation for court approval of the settlement; the form of such Stipulation shall be as in **Exhibit 1.** Upon the court's approval, the FLSA claims asserted in the federal action shall be dismissed with prejudice as to all parties. The Court shall retain jurisdiction (1) to ensure CPS's compliance with its promise to pay the settlement amount; (2) for CPS to re-file its motion for sanctions (including the application for costs and attorney's fees) arising from the mistrial declared on December 12, 2012; and (3) to determine Plaintiffs' motion for reasonable attorney's fees and/or taxation of court costs made pursuant to 29 U.S.C. § 216(b). All such post-settlement motions shall be filed within sixty (60) days following entry of the court's order approving the settlement; provided that the Parties may stipulate to extend this deadline.

    e.    CPS shall issue an IRS Form W-2 to Whittington reflecting the gross amount of the wage check paid to him and reflecting the deduction of payroll taxes;

. 4.   <u>Release of Known and Unknown Claims.</u>  Except as expressly preserved herein, Whittington hereby knowingly and voluntarily releases and forever discharges each of the Releasees from any and all causes of action and claims of any nature whatsoever (hereafter "Claims") which Whittington now has or may hereafter have against the Releasees, or any of them, from the beginning of time through the date that the Court approves this Settlement Agreement. The Claims released include, without limitation except as expressly preserved herein ("Preserved Claims"), any claims arising out of or based upon Whittington's employment, including, but not limited to, statutory claims, tort claims, contractual claims, and equitable claims.

5.   <u>Preserved Claims.</u>  This Agreement shall not release any claims Whittington possesses for payment of attorney's fees and costs pursuant to 29 U.S.C. 216(b); however, the parties agree those claims can be subsequently released by a court order or by Whittington's attorneys. The Parties further agree that Whittington shall retain his existing claims arising under Nevada law asserted as a class action participant in the state court actions captioned (1) *Dennis Tallman Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A389249 ("*Tallman*"); (2) *Donald Mika and Beryl Harter, Individually and on Behalf of Others Similarly Situated v. CPS Security (USA), Inc. et al*, Clark County District Court Case No. A-1255195-C ("*Mika/Harter*"), and (3) *Beryl Harter, Donald Mika and Ronald Simone Individually and on Behalf of Others Similarly Situated v. Christopher Coffey et al*, Clark County District Court Case No. A-12-673852-C. ("Harter/Mika/Simone"). The *Mika/Harter* state court action is currently pending writ review by the Nevada Supreme Court, Case No. 61390, as is the *Tallman* action.  The Parties further agree as follows:

    a.    CPS and Releasees may not and will not assert this settlement as a bar to Whittington's foregoing Nevada law claims and may not introduce the fact of this settlement, the Payment, and/or or this Agreement for any purpose in any such state court litigations or any arbitration of the claims made in such state court litigations; provided that

        i.    if a judgment or award is entered in Whittington's favor upon those Nevada law claims, CPS and/or Releasees shall be entitled to reduce such judgment by $1.00 for every $1.00 of the gross amount paid to Whittington pursuant to this Agreement and advise the court as to the reasons for this reduction if, in the Releasees' good faith judgment, this is needed to effectuate this reduction;

        ii.    if a judgment or award is entered in Whittington's favor in those state court litigations or any arbitration of the claims made in such state court litigations, calculation of the amount of prejudgment and/or post-judgment interest, if any, shall be based upon the amount of the judgment less the deduction referenced in Paragraph 5(a)(i) above and this Agreement may

be introduced for that purpose; and

iii.   the fact of this settlement, this Agreement, and the Payment may be introduced in any legal or arbitration proceeding, motion or application that takes place following the determination on the merits of Whittington's claims and damages, if any, in the state court litigations or in any individual arbitration that involves fees or costs paid or to be paid to any attorney for Whittington or to CPS and/or Releasees in any individual arbitration proceeding and/or any litigation.

b.   Whittington, either on his own behalf or on behalf of other persons including the members of any class of persons, may not and will not assert or introduce into evidence, in any state court litigations or any arbitration of the claims made in such state court litigations, the fact of the settlement embodied in this Agreement, the terms thereof, and/or this Agreement. .

c.   In the event either party breaches paragraph 5(a) or 5(b) immediately above, as applicable, in one of the state court lawsuits referenced above, the parties shall advise the court of this Agreement and the opposing party has the right to request the court fashion appropriate relief as is available by law.   In the event such breach takes place during the course of an arbitration proceeding, the non-breaching party shall have the right to have a new arbitrator appointed to hear and determine the parties' dispute.

6.   <u>Waiver of Claims under ADEA</u>.  Whittington acknowledges that he is waiving and releasing any rights he may have under the Age Discrimination in Employment Act of 1967 ("ADEA") and that this waiver and release is both knowing and voluntary.  Whittington and CPS agree that this waiver and release does not apply to any rights or claims that may arise under ADEA after the Effective Date of this Agreement.  Whittington acknowledges that the consideration given for this waiver and release is in addition to anything of value to which Whittington  was already entitled.  Whittington  further acknowledges that he has been advised by this writing that:

a.   He should consult with an attorney prior to executing this Agreement;

b.   He has at least twenty-one (21) days within which to consider this Agreement;

c.   He has at least seven (7) days following the execution of this Agreement by the Parties to revoke the Agreement; and

d.   This Agreement shall not be effective until the eighth (8th) day after he has executed the Agreement.

Whittington may sign this Release and the Agreement prior to the end of the twenty-one (21) day consideration period, thereby commencing the mandatory seven (7) day revocation period.  By signing this Release and the Agreement, Whittington indicates his decision to

Settlement Agreement and General Release                                   Page 5

waive the twenty-one (21) day consideration period.

7. <u>No Reemployment</u>. Whittington covenants that he will not reapply for employment with CPS or any of the Releasees. The Parties agree that, should Whittington breach this promise and become reemployed by Releasees, this agreement shall constitute cause for immediate dismissal.

8. <u>Unknown Facts or Claims</u>. Whittington expressly acknowledges his understanding there may exist damages or claims in his favor pertaining to the matters released of which he has no knowledge, reason to know or suspicion at the time of execution of the Agreement. Whittington acknowledges further that he may discover facts different from or in addition to those he now knows or believes to be true with respect to the actions of those persons released in Paragraph 4 above [release] prior to the date of the Agreement. Whittington acknowledges the Agreement shall apply to all such unknown and unanticipated damages or claims as well as to those now known or disclosed, and, further, that the Agreement shall remain in full force and effect in all respects notwithstanding any such different or additional facts.

9. <u>Non-Disparagement</u>. Whittington agrees that he will not make any disparaging remarks or statements to anyone regarding CPS or any of the other Releasees. CPS agrees that no officer or director or human resources department employee of the Company shall make any disparaging remarks or statements regarding Whittington. CPS shall be entitled to confirm the dates of Whittington's employment in response to inquiries about his employment but shall not direct or authorize any other communications be made about Whittington's employment with CPS. Owing to the size of its business operations, CPS cannot warrant that none of its employees will make communications concerning Whittington's employment that it does not direct or authorize and it will not be liable for its failure to prevent such communications. Notwithstanding this provision, the parties shall not be in breach of this section based on the making of any truthful statements under oath if compelled to do so by subpoena or other judicial process.

10. <u>Assumption of Risk</u>. Each of the Parties fully understands that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by any of the Parties to be true, each of the Parties expressly accepts and assumes the risk of such possible difference in fact and agrees that the release remains effective notwithstanding any such difference in fact. This Agreement shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating purposes are (for any reason) inaccurate or inappropriate.

11. <u>Effective Date</u>. The Effective Date of this Agreement shall be date upon which the Court enters an Order Approving this Settlement Agreement and Release.

12. <u>Choice of Law</u>. This Agreement shall be construed in accordance with, and governed by the laws of the State of Nevada.

13. <u>Integrated Agreement</u>. This Agreement represents the complete and exclusive statement of

Settlement Agreement and General Release                                    Page 6

the entire settlement agreement between the Parties and supersedes other promises and
agreement or any kind, as well as all negotiation and discussions between the Parties hereto
and/or their respective legal counsel with respect to the subject matters covered herein.  No
other agreements, representations or warranties, express or implied, oral or written have been
made by any of the Parties concerning the subject matter of this integrated agreement.  The
parties may exchange copies of these agreements and sign them on separate copies, the
copies so executed and exchanged shall be binding on the parties as if they were a single,
originally signed, document.

14.  **Confidentiality.**  This Agreement shall be lodged with the court for the court's consideration
and approval, but the Agreement shall not be filed in any court, except if necessary to enforce
its terms or if such filing is compelled by a court order.


Dated: August _13_, 2013                              _____
                                                      William Babcock, CFO
                                                      CPS Security (USA), Inc.


Dated: August _6_, 2013                               _____
                                                      John Whittington


STATE OF WEST VIRGINIA                 )
                                       ) ss.
COUNTY OF _Kanawha_                    )

    On this _6th_ day of _August_____, 2013, personally appeared before me, a notary
public, John Whittington personally known (or proved) to me to be the person whose name is
subscribed to the above instrument, who acknowledged that she executed the above document.

        (SEAL)                                        _____
                                                      Notary Public

Official Seal
Notary Public, State of West Virginia
Charolette R. Perdue
City National Bank
3601 McCorkle Ave SE
Charleston WV 25304
My Commission Expires February 1, 2017