1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAMER ZUCKER ABBOTT
Carol Davis Zucker        #2543
Timothy W. Roehrs         #9668
3000 West Charleston Boulevard, Suite 3
Las Vegas, Nevada 89102-1990
Tel: (702) 259-8640
Fax: (702) 259-8646
Email:  czucker@kzalaw.com
Email:  troehrs@kzalaw.com

Jim D. Newman, *pro hac vice,* (Cal. Bar. No.133232 )
Tazamisha H. Imara, *pro hac vice* (Cal. Bar No. 201266)
CPS SECURITY SOLUTIONS, INC.
436 West Walnut St.
Gardena, California 90248
Tel: (310) 878-8165
Fax: (310) 868-2835
Email:  jnewman@cpssecurity.com

Attorneys for Defendants CPS Security (USA), Inc.
and CPS Construction Security Plus, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS TALLMAN, Individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> CPS SECURITY (USA), INC., CPS CONSTRUCTION SECURITY PLUS, INC., and JOHN DOES I through XXX, actual names and number unknown, <br><br> Defendants. <br> _____ | CASE NO. 2:09-cv-00944-PMP-PAL <br><br> **DEFENDANTS' PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS** <br><br> **29 U.S.C. § 216(b)** |

Defendants CPS Security (USA), Inc. and CPS Construction Security Plus, Inc. (hereinafter together referenced as "CPS" or "Defendants"), by and through the undersigned counsel of record, hereby partially oppose Plaintiffs' Motion for an Award of Attorney's Fees and Costs filed on December 4, 2013 (Docket No. 256). Plaintiffs seek an award of **$379,828.00** in attorney's fees and **$16,522.75** in court costs and expenses. While Plaintiffs are technically the "prevailing" party and are entitled to an award of allowable court costs and *reasonable* attorney's fees, the fees requested here are not reasonable and should be substantially reduced by the Court. This Partial Opposition is based upon the pleadings and papers on file herein, the following Memorandum of Points and Authorities, the Declaration of Grant D. Stiefel, Esq., **Exhibit 1,** and the Declaration of Jim D. Newman, Esq., **Exhibit 2**, and any argument that the Court may allow at any hearing on Plaintiffs' motion.

## I.   INTRODUCTION

This contentious litigation was commenced by Plaintiffs' counsel Leon Greenberg more than three and a half years ago, on April 30, 2009. From the outset, this relatively straightforward wage dispute has been conducted by Plaintiffs' counsel as a scorched-earth *in terrorem* attack on the Defendants, as well as their corporate officers and affiliates[1] that has already caused an extensive expenditure of attorney's fees by the Defendants. Early in the case, Defendants offered to negotiate a settlement with Mr. Tallman, a former Trailer Guard who had been employed by CPS in the State of Nevada. Tallman's counsel

---

[1]   As the Court is aware, this case spawned a second federal FLSA collective action, *Harter v. CPS Security (USA), Inc., et al.*, Case No. 2:12-CV-00084-MMD-PAL. And after Mr. Tallman's state law claims were remanded to state court, those claims also spawned new lawsuits filed by Mr. Greenberg on behalf of Ms. Harter and Donald Mika (one of the Opt-in Plaintiffs in this collective action) against CPS, a corporate affiliate and two of CPS's corporate officers. Mr. Greenberg has also filed with the National Labor Relations Board no less than four Unfair Labor Practice charges on behalf of these same employees.

categorically refused to negotiate any settlement on an individual basis.  (See Declaration of Jim D. Newman in support of this Partial Opposition, ¶ ¶ 9, 10).  In addition, CPS offered to stipulate to conditional certification of an FLSA collective action so as to allow any other Nevada Trailer Guards to join an "opt-in" collective action, but Plaintiffs' counsel refused to negotiate on any basis other than an "opt-out" class-wide basis.  *Id.*  As the U.S. Supreme Court has repeatedly observed, class actions entail the "risk of 'in terrorem' settlements" by asserting pressure on a defendant "to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability."  *Amgen v. Connecticut Retirement Plans and Trust Funds,* __ U.S. ___, 133 S.Ct. 1184, 1200 (2013) citing *AT&T Mobility v. Concepcion*, 563 U.S. ___, 131 S.Ct. 1740, 1752 (2011).

In the course of Plaintiffs' counsel lost battle for class certification, he filed unnecessary motions seeking leave of court to file consents to join Mr. Tallman's action on behalf of other Nevada Trailer Guards.  Docket Nos. 49, 51, 54, 60, 71.  Eventually, after these motions were denied without prejudice, seven other Trailer Guards filed consents to join.  Two of them accepted modest settlements (of $6,000 and $500 respectively) at the first Mandatory Settlement Conference ordered by the Court.  Eventually, the claims of the six remaining Plaintiffs went to trial, but during the testimony of the first witness, Plaintiff's counsel flagrantly violated the Court's evidentiary rulings, causing a mistrial. Docket No. 205.

Months later, after the Court ordered the Plaintiffs to appear at a second Mandatory Settlement Conference (Docket Nos. 224, 227), a settlement was reached.   The amount of money Mr. Tallman recovered ($30,000), while approximately 70% of his claimed damages, was actually *less* than the amount he would likely have received (after payment of attorney's fees) if he had settled his case individually in 2010.[2]  The other Opt-in Plaintiffs received between 19 and

---

[2]   After deduction of a contingent attorney fee payment of 33.33%, a settlement of $45,000 would have yielded the same $30,000 sum that Tallman eventually

42 percent of their claimed damages.  Critically, the total amount of the settlements paid to the eight Plaintiffs, **$121,800**, was a fraction of the **$2,000,000** class settlement originally sought (Newman Decl. ¶ 9) and considerably less than Defendant's anticipated costs of continuing to defend the case in a retrial.  Indeed, it is a fraction of the **nearly $400,000** in fees and costs that Mr. Greenberg now seeks to recover from CPS. The amount of resources consumed by Plaintiffs' counsel (not to mention Defendants' counsel and the Court) to recover this modest sum was simply not *reasonable*.  No public benefit was achieved and no policies were changed; in the end the entire dispute was about Mr. Greenberg's fees and little else.

Thus, while Defendants concede that Plaintiffs are the "prevailing party" for purposes of the FLSA's fee-shifting provision, the "degree of success" here is considerably circumscribed.  *Hensley v. Eckerhart* 461 U.S. 424 (1983) (where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained).

Under the FLSA, it is mandatory for the court to award a prevailing Plaintiff his reasonable attorney's fees, but it is the fee applicant's burden to prove by a preponderance of the evidence the reasonableness of the hours worked and the hourly rate claimed.  *Id.,* at 437;  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999).  While a judge may not mechanically reduce the lodestar on account of partial success, *Cole v. Wodziak*, 169 F.3d 486, 487 (7th Cir. 1999), the relationship of the fees to the recovery "is a factor that the court should

---

received.  As set forth in the declaration of Jim D. Newman, at the time of the mediation in 2010, CPS's outside counsel had settlement authority in excess of this amount.  However, because Mr. Tallman's counsel continuously refused (until after class certification had been denied) to entertain **any** settlement that did not include class-wide relief there was no meaningful opportunity to settle the case before the fees of Plaintiffs' counsel had skyrocketed.  (See Newman Declaration).

consider when contemplating a reduction of the modified lodestar amount. *Spegon, supra*, 175 F.3d at 558.

Plaintiffs contend that they received a "highly favorable result" that does not justify any further adjustment to the lodestar, beyond the "rigorous" self-discounting they claim to have utilized.  (Pltff. Motion 1:28, 2:35).  But because the purpose of the FLSA is the recovery of private damages, a plaintiff experiencing limited success in an FLSA case may not have his attorney's fees calculated in the same way as discrimination plaintiff achieving limited success. *Spegon, supra*, 175 F.3d at 558.  In *Spegon*, the Seventh Circuit concluded that the trial court had not abused its discretion in reducing the lodestar amount by 50% given that the judgment recovered by the plaintiff was "significantly less than the recovery he sought," he was "not reinstated to his job," and no important social benefits or nonpecuniary rights were furthered by his case.  *Id.*

Plaintiffs' fee application asserts that Plaintiffs' counsel

> "have formulated a very conservative fee request that does not award fees for significant amounts of time for which fees could, and they believe, should, be properly awarded.  As a result, the requested fee award is reasonable and already heavily discounted and should be approved without further reduction."

(Pltff. Motion at 2:1-5).  Plaintiffs also contend that the hourly rates used in the preparation of their fee application are "if anything, on the low end." (Pltff. Motion at 3:6-7).  To the contrary, as the accompanying declaration of Defendants' expert witness, Grant D. Stiefel, Esq., establishes, the proposed hourly rates are highly inflated.

In calculating the lodestar, the Court should reduce the number of hours to a reasonable number and then should reduce the hourly rates to appropriate market rates for the forum market and the experience of counsel in this case.   The Court should then apply a downward adjustment to the lodestar to account for Plaintiffs' limited results achieved here.  Alternatively, the court should also sanction

Plaintiffs' counsel for their litigation misconduct (causing a mistrial by deliberate violation of the court's evidentiary rulings that prohibited reference to any prior settlement by CPS, Docket Nos. 174, 205) and disallow the recovery of all fees and expenses related to preparation for and attendance at the trial which resulted in a mistrial.[3]

## II.   ARGUMENT

### A.   In Calculating the Lodestar, the Court Should Reduce the Amount of Hours Claimed by Plaintiffs' Counsel.

Plaintiffs' counsel contend that their fee application does not include time entries "involving unsuccessful motion practice by plaintiff's counsel, or work on state law issues for which fees are not properly awardable under the Fair Labor Standards Act." (Motion 2:8-12).  This is not true.   In the declaration of Grant D. Stiefel, Defendants' expert witness calculated the number of hours claimed for certain discrete tasks that Defendant contends were not reasonable in light of the limited success achieved by Plaintiffs and the overall conduct of this litigation by the Greenberg law firm.  These include: (1) 23.9 hours for briefing, preparation , travel time and attendance at the September 7, 2010 Mediation; (2) 23.8 hours for Plaintiffs' Motion to Compel Identity of Putative Class Members; (3) 23.75 hours

---

[3]  Defendants have separately brought a motion for sanctions seeking recovery of certain defense costs pursuant to 29 U.S.C. § 1927 because of their vexatious and unreasonable multiplication of proceedings.  The Court also has the *inherent authority* to further sanction Plaintiffs' counsel for their misconduct by reducing the award of "reasonable" attorney's fees to which they otherwise might be entitled. *Wescott Agri-Products, Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091 (10th Cir. 2012) (approving trial court's denial of contractual attorney's fees to prevailing party because of counsel's unprofessional conduct; *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244-46 (11th Cir. 2009) (upholding court's inherent power to adjust presumptively reasonable lodestar for misconduct of counsel).  The conduct described in Defendants' Motion for Sanctions justifies the reduction of the lodestar by eliminating all hours for pretrial preparation and trial.

for written discovery between December 2010 and January 2011; (4) 94.6 hours for preparation of Plaintiffs' unsuccessful Motion for Summary Judgment (including motion, reply and hearing, but excluding opposition to CPS's Motion for Summary Judgment); (5) 8.6 hours for Plaintiffs' unauthorized and unsuccessful Motion to Delineate Findings (including reply); (6) 32.05 hours for the Plaintiffs' largely unsuccessful Motion in Limine and Plaintiffs' opposition to Defendant's largely successful Motions *in Limine*; and (7) additional trial preparation time related to preparation of jury instructions, verdict forms, witness preparation, voir dire, exhibit lists and trial brief – all of which were put to waste because of the mistrial – including 89.6 hours for Leon Greenberg, 23.6 hours for Dana Sniegocki and 71.0 hours for Sydney Saucier.

All or most of this time submitted for these seven categories should be excluded because such time was not reasonably necessary to the successful prosecution of Plaintiffs' claims.   For example, none of the 23.8 hours related to the Motion to Compel Identity of the Putative Class Members was reasonably necessary to this case because Defendants repeatedly offered **to stipulate** to conditional certification of an FLSA collective action and to have notice sent to the Nevada Trailer Guards by a Third-Party Administrator.  Instead, Plaintiffs' counsel insisted on getting the names, addresses and telephone numbers of CPS Trailer Guards so they could contact the "putative class members" regarding their putative Nevada class action claims.  Even if the state law claims are deemed related to the FLSA claims, the only reason a motion to compel was necessary was because Plaintiffs insisted on contacting the group of Trailer Guards without court supervision (and then used that process to solicit additional clients).[4]

---

[4]  It is unfortunate enough that Plaintiffs' counsel enlisted the Court's assistance in such expansionary "ambulance-chasing" behavior, but to ask the Defendants to reimburse them for such conduct truly lies beyond the pale.

Similarly, the discovery propounded by Plaintiffs' counsel in December 2010 and January 2011 was conducted so inefficiently as to be abusive.  During a time period when the Magistrate Judge had ruled no additional discovery extensions would be allowed, Docket No. 39, Tallman propounded 16 separate sets of written discovery – sometimes as many as four new separate discovery requests in a particular week.  The nearly 24 hours spent propounding these requests should not reasonably be charged to Defendants.

The Court is most familiar with the misconduct of Plaintiffs' counsel at trial which resulted in a mistrial.  As discussed above, the 184.20 hours of time spent in trial preparation should not be included in the lodestar.  Even if the time were otherwise appropriately included, the court clearly has inherent authority to exclude that time as a sanction for the misconduct of Plaintiffs' counsel at trial. *Sahyers, supra*, 560 F.3d at 1243-4 (holding that because of unprofessional conduct, "there are some cases in which a reasonable fee is no fee.").

In addition, the Plaintiffs' largely unsuccessful Motion in Limine should be excluded from the lodestar.  Plaintiffs chose to bring a single motion with multiple subparts and did not separately account for the time spent on different issues.  In their motion, Plaintiffs sought to (1) have admitted the interim findings of the DOL investigator in Smyrna, Georgia; (2) have excluded any reference to the former "homeless" status of the Plaintiffs; (3) have excluded any disciplinary action against Plaintiffs' and (4) have excluded CPS's new hire orientation video for Trailer Guards.  Defendants opposed (and the Court then denied) subparts (1) and (4).  Although Defendants contested Plaintiffs' claim that an *in limine* order was appropriate or necessary, Defendants agreed that subparts (2) and (3) raised legitimate issues.  Had Plaintiffs reasonably met and conferred about those two

issues, it likely would not have been necessary to bring the motion *in limine*. Because the Court substantially denied the motion and granted almost all of Defendants' motions *in limine* (Docket Nos. 174, 195, 201), this time should not be included in the lodestar, even if the Court does not exclude the remaining time spent on pretrial preparation.  See, *Sahyers supra*, 560 F.3d 1241, 1244-46 (approving reduction of lodestar because court determined Plaintiffs' counsel should have meet and conferred and failed to do so).

Finally, the Court should exclude the 23.9 hours related to the September 7, 2010 Mediation and the $6,000 in court costs or expenses sought by Plaintiffs' counsel for the fees paid to Mediator Mark Rudy.  (See, Exh. F to Plaintiffs' Motion).  Without revealing any confidential communications made during the mediation, the accompanying declaration of Jim D. Newman establishes the fact that Plaintiffs took the position at the time that settlement could only be negotiated on a class-wide basis and refused to consider an individual settlement or an opt-in FLSA collective action.[5]  In contravention of rules of the mediation process, the Plaintiff was not even present at the mediation, even though the Defendants had representatives present (with settlement authority).  Because Mr. Tallman did not participate in good faith in the mediation process, the 2010 Mediation cannot, in any sense, have contributed to Plaintiffs' recovery in this case and the fees and expenses are not reasonably charged to Defendants.

---

[5]  Indeed, it would be impossible for Mr. Newman to reveal confidential communications that were made during the Mediation.  Mr. Newman had a conflicting court appearance on the same morning that was located a few miles away from the location of the Mediation and the Mediation had concluded before he even got there!

When added together, 257.80 of the 542.6325 total hours claimed[6] by Leon Greenberg should be excluded from the lodestar, leaving a balance of 284.83 hours. Similarly, 54.1 of the 269.4925 total hours claimed on behalf of Dana Sniegocki should be excluded from the lodestar, leaving a balance of 215.39 hours.  And, at most, 23.20 of the paralegal hours claimed on behalf of Ms. Saucier should be included in the lodestar. (Stiefel Declaration, ¶ 55).

> **B.     In Calculating the Lodestar, the Court Should Reduce the Hourly Rates Claimed by Plaintiffs' Counsel.**

Plaintiffs' fee application requests fees at rates that exceed the reasonable rates for similarly experienced lawyers in the Las Vegas market.  The application requests $475.00 per hour for the services of Leon Greenberg, $350.00 per hour for the services of associate Dana Sniegocki and $150.00 per hour for the alleged paralegal services of Sydney Saucier.  Plaintiff's counsel authenticates these rates with only his self-serving declaration and oblique reference to two previous orders in unrelated litigation against Cox Communications in which this Court awarded Mr. Greenberg fees at the rate of $450 per hour (and, he neglects to add, awarded his associate fees at the rate of $250 per hour, not $350).  "An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services."  *Spegon, supra,* 175 F.3d at 556.  Nor is the Court bound to follow its own fee awards in another case.  While those fees were contested by Cox, the opposition does not appear to have been supported by expert witness testimony and the Court's orders do not analyze the reasonableness

---

[6]  Mr. Greenberg's math is confusing, as his declaration claims that the total of 542.6325 hours (an odd fraction in itself) was computed by adding 10 hours to his chargeable hours (699.80 less 121.6755 hours of "non-chargeable time" less) then discounting the total by 10% (Greenberg Decl. 2:17-23), but that yields a different number than the 542.6325 hours claimed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of either the hourly rates or the hours requested.  "A district court abuses its discretion not when it declines to follow another court's determination of an attorney's reasonable hourly rate, but rather, when it dismisses that court's determination as irrelevant." *Id.*, at 557.  The same logic applies here; provided that the Court explains its reasons for determining the reasonable rates for the legal services performed, its prior fee awards to Mr. Greenberg do not forever set a "floor" for his "reasonable" rate.[7]

Here, Mr. Stiefel's declaration, relying upon objective market research, establishes the range of reasonable hourly rates ($285-$325 per hour for Greenberg) and concludes that the most reasonable hourly rate for Mr. Greenberg's services is $300.00 per hour and the most reasonable rate for Ms. Sniegocki's services is $175.00 per hour.  While Mr. Stiefel's expert opinion is that the fees for Ms. Saucier's services were overwhelmingly for clerical work and should be disallowed in their entirety, his declaration also establishes that if any fees are awarded for her services, then the most reasonable hourly rate would be $115.00.

### C.   The Court Should Adjust the Lodestar Based Upon the Limited Success Achieved Here and Because of the Overreaching Manner in Which Plaintiffs' Counsel Conducted this Litigation.

After the Court determines the presumptively reasonable lodestar, it must consider whether an upward or downward adjust is warranted.   Here, Plaintiffs' counsel has not requested an upward adjustment and none would be warranted in any event.  However, a substantial downward adjustment is warranted for two

---

[7] It would be entirely reasonable for the Court to reassess its view of the *quality* of representation provided by Mr. Greenberg based upon his conduct and performance in this case as compared to others.

separate reasons: (1) the limited success achieved and (2) the overreaching manner in which Plaintiffs' counsel conduct this litigation.

### 1.    Substantial Reduction of the Lodestar Is Warranted Based on the Limited Success Achieved.

As the U.S. Supreme Court observed in *Hensley*,

> "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

*Hensley v. Eckerhart*, *supra,* 461 U.S. at 434.

Plaintiffs tacitly concede that there are some claims and issues on which they did not prevail, but they contend that the remaining issues are so intertwined with the wage claim on which they achieved success as to justify the amount of fees claimed.   For example, they claim they are entitled to the substantial fees incurred by them in prosecuting their unsuccessful motion for summary judgment. However, they have not presented an accurate picture of the law established by *Hensley* and subsequent cases:

> "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. **This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.** Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley v. Eckerhart*, *supra,* 461 U.S. 436.

Moreover, claims that are deemed "unrelated" should not be included in the lodestar.   Here, the Plaintiffs' wage claims under Nevada law, although arising

from a common nucleus of facts, are legally unrelated. "The congressional intent [under the FLSA and similar fee-shifting statutes] to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.,* at 435. Since the Plaintiffs state law claims were, eventually, litigated in a separate lawsuit, this principle must be applied to exclude awarding fees for those claims. If such fees are not entirely segregated, a further reduction of the lodestar is warranted. Since Plaintiffs' claimed fees include work on the state wage claims that overlap with their FLSA claims, a further reduction to the lodestar is warranted here.

Finally, a substantial downward adjustment is warranted because the results achieved (a total settlement of $121,800) is small in comparison to the scope of the litigation as a whole. Plaintiffs' counsel at the outset demanded $2,000,000 in settlement and was unwilling to even discuss any compromise that did not include class-wide relief. As the Supreme Court observed in *Hensley*:

> "We emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."

*Hensley, supra,* 461 U.S. 440 (1983).

This principle was illustrated in the case of *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999). In *Spegon,* an FLSA suit for unpaid overtime, the Plaintiff made a $6,600 settlement demand (inclusive of attorney's fees). He later accepted an offer of judgment in the amount of $1,100 plus court costs and a reasonable attorney's fee to be determined by the court. The Plaintiff's attorneys applied for an award of $7,280.70 in fees and costs. The trial court reduced the number of hours and the hourly rate, then further reduced the

modified lodestar by 50% in light of the plaintiff's limited success, ultimately awarding $752.70 in reasonable fees and costs.

The Court of Appeals affirmed a 50% downward reduction to the lodestar based upon the Plaintiffs' limited success, observing that "it is readily evident that the $1,100 judgment recovered by Spegon was significantly less than the recovery he sought." Noting the fact that no other relief was awarded but money and that the $1,100 judgment was "a good deal less than the $1781.25 in back overtime pay Spegon claimed his employer owed him," the Court of Appeals held that the trial court had not abused its discretion in reducing the modified lodestar by one-half."

### 2. Substantial Reduction of the Lodestar Is Warranted Based on the Overreaching Manner in Which Plaintiffs' Counsel Conducted this Litigation.

In their motion papers, Plaintiffs' counsel contends that the substantial fees were the consequence of the conduct of the Defendants and their counsel. But, in truth, the Plaintiffs' counsel overreached at every turn. First, they insisted that the case be litigated as an opt-out class action and until they had lost this battle, they refused to proceed according to the means set forth by Congress for the litigation of FLSA disputes (opt-in collective actions). Indeed, because the FLSA claims were largely duplicative of the state law claims, one must question why Mr. Tallman did not simply dismiss his state law claims and ask to have them remanded to state court as soon as the case had been removed to federal court? The availability of one-way fee shifting under the FLSA is the likely reason. In the grand scheme of things, Plaintiffs' counsel tried to have their cake and eat it too.

The parties negotiated a fact stipulation the purpose of which was to allow the case to be decided on legal issues, and Plaintiffs then submitted declarations that created material disputes of fact leading the Court to deny

both parties motions for summary judgment.  (Docket Nos. 83, 84, 90, 81, 96-99).

Plaintiffs brought trial motions seeking reconsideration of *in limine* orders and then when the Court ruled the evidence admissible, they put it in front of the jury anyway.  (Docket No. 259).  This is clearly the type of case. like *Sayhers, supra,* where the reasonable fee may be no fee at all.   See, *Messana v. Mercedes Benz* 2000 WL 988168 (N.D. Ill. 2000)

In *Messana*, the court determined that a further reduction to the presumptively reasonable lodestar figure was warranted because of overreaching by Plaintiffs' counsel in submitting the fee application.

> "On the court's own initiative, amount of plaintiff's total award (including both fees and costs) will be reduced by 20%.  In its fee petition, K & M sought a risk multiplier of 1.5 and over $3,00 in expert witness costs.  Despite purportedly spending 4.3 hours preparing the fee petition, K & M failed to discern that the well-established law does not warrant either award.  K & M's request for $43,299.00 in fees and $3,637.20 in costs is ludicrous in light of the fact that they are only entitled to $25,742.60 in fees plus an additional $635.20 in costs. . . ."

Quoting earlier decisions from the Northern District of Illinois, the court observed:

> "[S]ome price may reasonably be imposed on a litigant [ ] for having put its adversary and this Court to work in converting what should be a pro forma exercise (the submission and approval of a conventional bill of costs) into a "federal case" [ ] by making some claims that do not bear a semblance of merit. [citations omitted]."

Courts have the inherent discretion to sanction abuses of the court process by reducing what otherwise would be a reasonable attorney's fee in a fee-shifting case under the FLSA.  While it is true that courts should exercise their discretion only in exceptional cases, this case is one of those exceptional cases where imposition of the fee award requested and even the adjusted lodestar figure of $121,800 would be unjust.   The Court should exercise its discretion to reduce the

award because of the overreaching of Plaintiffs' counsel in order to avoid putting the judicial seal of approval on such bad behavior.

## III.   CONCLUSION

For the reasons set forth herein, the Court should reduce the lodestar (1) by excluding hours not reasonably expended and subtracting 257.8 hours claimed by Leon Greenberg, 54.1 hours claimed by Dana Sniegocki and 79 hours claimed by Sydney Saucier; and (2) by reducing the hourly rates claimed by Plaintiffs' counsel to $300 for attorney Leon Greenberg, $175 for attorney Dana Sniegocki and $115 for paralegal Sydney Saucier.  Properly adjusted, the maximum adjusted lodestar calculation should be 284.83 hours at $300.00 per hour for Mr. Greenberg ($85,449.00),  215.39 hours at $175.00 per hour for Ms. Sniegocki ($37,693.25) and 23.20 hours at $115.00 per hour for Ms. Saucier ($2,668), for a total of $125,810.25.  Based on *Hensley*, *Spegon*, *Messana* and other similar cases, the Court should then apply a downward adjustment of 50% to 75% to account for the Plaintiffs' limited success and the overreaching manner in which Plaintiffs' counsel litigated this action.  That would yield a reasonable attorney's fee in the range of $**31,452.56** to **$62,905.13**.   An award in this range is both consistent with the law and rationale in light of the total settlement amount of **$121,800.**

The Court should also exclude from costs the $6,000 in Mediator fees and the $177.40 in travel expenses related to the Mediation and award Plaintiffs **$1,069.21** in court costs and expenses.

DATED:  January 22, 2014.

Respectfully Submitted:

By:   */s/ Timothy W. Roehrs*

KAMER ZUCKER ABBOTT
Carol Davis Zucker
Timothy W. Roehrs
3000 West Charleston Boulevard,
Suite 3
Las Vegas, Nevada 89102-1990
Tel: (702) 259-8640
Fax: (702) 259-8646

Jim D. Newman
Tazamisha H. Imara
CPS Security Solutions, Inc.

436 West Walnut St.
Gardena, California, 90248
Tel: (310) 878-8165
Fax: (310) 868-2835

Attorneys for Defendants CPS
SECURITY (USA), INC., and CPS
CONSTRUCTION SECURITY
PLUS, INC.

1
2

## CERTIFICATE OF SERVICE

3
4

I hereby certify that on this 22th day of January, 2014, the undersigned, served a

copy of the foregoing **DEFENDANTS' PARTIAL OPPOSITION TO**

5
6

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES AND**

7

**COSTS** pursuant to the Electronic Case Filing system of the United States District

8

Court, District of Nevada:

9
10

Leon Greenberg
A Professional Corporation

11

2965 South Jones Boulevard
Suite E-4

12

Las Vegas, Nevada 89146

13
14

Mark R. Thierman, Esq.
Thierman Law Firm

15

7287 Lakeside Drive
Reno, Nevada 89511

16
17

Christian Gabroy
Gabroy Law Offices

18

170 S. Green Valley Parkway
Building B, Suite 280

19

Henderson, Nevada 89012

20
21
22

By:_____ */s/ Timothy W. Roehrs*_____

23
24
25
26
27
28