UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DENNIS TALLMAN, et al.,

               Plaintiffs,

v.

CPS SECURITY (USA), INC. and CPS CONSTRUCTION SECURITY PLUS, INC.,

               Defendants.

2:09-CV-00944-PMP-PAL

ORDER

Presently before the Court is Plaintiff's Motion for an Award of Attorney's Fees and Costs (Doc. #256), filed on December 4, 2013.  Defendants filed an Opposition (Doc. #260) on January 22, 2014.  Plaintiffs filed a Reply (Doc. #267) on March 3, 2014.

Also before the Court is Defendants' Renewed Motion for Sanctions Against Plaintiffs' Counsel (Doc. #259), filed on January 6, 2014.  Plaintiffs filed an Opposition (Doc. #263) on January 30, 2014.  Defendants filed a Reply (Doc. #265) on February 18, 2014.

Also before the Court is Plaintiffs' Motion to Strike Declaration of Jim D. Newman (Doc. #264), filed on February 11, 2014.  Defendants filed an Opposition (Doc. #266) on February 28, 2014.  Plaintiffs filed a Reply (Doc. #268) on March 5, 2014.

## I. BACKGROUND

The parties are familiar with the facts of this case, and the Court will not repeat them here except where necessary.  Defendants CPS Security (USA), Inc. and CPS Construction Security Plus, Inc. move for sanctions under 28 U.S.C. § 1927 because Plaintiffs' counsel presented an exhibit and elicited testimony about settlements in unrelated cases on the first day of trial even though the Court previously had ruled this type of evidence was inadmissible.  Plaintiffs' counsel's conduct resulted in the Court declaring a mistrial.

Defendants contend that to support a sanctions award under § 1927, they need not show Plaintiffs' counsel acted in bad faith, they need to show only recklessness. Defendants contend Plaintiffs' counsel was indifferent to the risk that his questioning of witness Christopher Coffey ("Coffey"), Defendant CPS Security (USA), Inc.'s president and chief executive officer, would cause a mistrial because the Court had excluded evidence of prior litigation and settlements in multiple pretrial orders.  Defendants thus argue Plaintiffs' counsel's conduct was at least reckless, if not intentional.  Defendants request sanctions in the form of Defendants' costs for trial preparation, costs related to trial, and post-mistrial costs associated with preparing for a second trial.  Defendants argue the Court could sanction Plaintiffs by denying or reducing their request for attorney's fees. Defendants contend sanctions are particularly appropriate because Plaintiffs previously unreasonably multiplied the proceedings by filing summary judgment motions after the dispositive motion deadline.

Plaintiffs respond that the standard for awarding sanctions under § 1927 requires a finding of subjective bad faith, and there is no evidence that Plaintiff's counsel acted in bad faith.  Rather, Plaintiffs contend counsel reacted in the heat of trial to testimony which he believed opened the door to the improper questioning, even though the Court previously ruled it inadmissible.  Plaintiffs also contend Defendants have not incurred any additional

1    reasonable expenses, and Defendants are the ones who needlessly have protracted this

2    litigation.  As to the untimely motions for summary judgment, Plaintiffs argue the Court

3    should not revisit that issue as it is unrelated to the mistrial.

4            Plaintiffs separately move for an award of attorney's fees under the Fair Labor

5    Standards Act ("FLSA").  Plaintiffs contend they are the prevailing party entitled to a fee

6    award, and that the hours expended are reasonable.  Plaintiffs state they already have

7    reduced the hours requested by excluding work on unsuccessful motions and certain work

8    on non-FLSA claims, and by further discounting the time spent by the lawyers and

9    paralegals by varying percentages.  Plaintiffs argue Defendants' litigation conduct increased

10   the hours Plaintiffs reasonably needed to expend to pursue their case.  Plaintiffs also

11   contend the requested hourly rates are reasonable, as demonstrated by counsel's affidavit

12   and by the Court's approval of similar rates in prior cases.  Plaintiffs request a total

13   attorney's fee award of $379,828.  Plaintiffs also request costs in the amount of $16,522.75.

14           Defendants respond that Plaintiffs are entitled only to a reasonable fee, and

15   Plaintiffs have engaged in litigation tactics which have prolonged the case unnecessarily,

16   such as refusing to negotiate settlement on an individual basis as opposed to a class-wide

17   settlement.  Defendants also argue Plaintiffs recovered far less than what they sought, and

18   Plaintiffs achieved no other benefits or change in company policy.  Defendants identify

19   seven categories in Plaintiffs' billing entries for which they contend Plaintiffs request

20   unreasonable hours.  Additionally, Defendants argue the rates charged are unreasonable,

21   and Defendants present an expert opinion on what rates would be reasonable.  Defendants

22   contend the lodestar amount should be further reduced based on the limited success

23   Plaintiffs achieved, work performed on non-FLSA claims, and Plaintiffs' counsel's conduct

24   of the litigation, including the conduct which resulted in the mistrial.

25           Plaintiffs move to strike the declaration of Jim D. Newman ("Newman") offered

26   in support of Defendants' Opposition to Plaintiffs' Motion for Attorney's Fees.  Plaintiffs

argue the Newman declaration improperly discloses settlement negotiations and incorrectly characterizes Plaintiffs' settlement positions, yet Defendants have declined to allow Plaintiffs to disclose what happened during a mediation and other settlement talks to rebut Defendants' characterizations.  Defendants respond that while Federal Rule of Evidence 408 prohibits the use of settlement evidence to prove liability or the amount of a claim, there is no bar to admitting this type of evidence in a post-judgment fee dispute. Defendants also argue the Newman Declaration does not reveal any confidential communications made during the mediation.

**II.  DEFENDANTS' RENEWED MOTION FOR SANCTIONS (Doc. #259)**

At a pretrial hearing, this Court ruled that evidence that Defendants entered into settlement agreements in other wage and hour lawsuits would be inadmissible at trial in this case.  (Renewed Mot. Sanctions (Doc. #259), Ex. 1 at 35.)  In response to Plaintiffs' counsel's request for clarification, the Court indicated that "reference to . . . the filing of any litigation and the settlement of the litigation" was excluded.  (Id. at 35-36.)  The Court reiterated this ruling at a later hearing.  (Renewed Mot. Sanctions, Ex. 3 at 21-23.)

On the first day of the jury trial, Plaintiffs' counsel again raised the issue of whether Plaintiffs could admit evidence of prior litigation against Defendants on their wage and hour policies as evidence of willfulness.  (Renewed Mot. Sanctions, Ex. 4 at 5-9.)  The Court indicated it would not change its ruling.  (Id. at 9.)

Later that same day, Plaintiffs' counsel, Leon Greenberg ("Greenberg"), asked Coffey on direct examination whether he was aware of any other lawsuits brought against CPS Security (USA), Inc., or any other company Coffey owned, claiming a failure to pay overtime or minimum wage.  (Tr. (Doc. #208) at 15.)  Defendants objected on the basis that the Court already had ruled evidence of other lawsuits was inadmissible.  (Id.)  The Court sustained the objection.  (Id. at 15-16.)  Greenberg then asked for a sidebar, but the Court denied the request, indicating that any issue could be raised at a later opportunity outside the

1   presence of the jury.  (Id. at 16.)  At the end of his direct examination of Coffey, Greenberg

2   made an offer of proof on this same topic, arguing that Coffey's knowledge of allegations

3   in other lawsuits was relevant to willfulness.  (Id. at 89-92.)  The Court indicated it would

4   not change its ruling.  (Id. at 91-92.)

5           On cross-examination, counsel for Defendants showed Coffey Exhibit 528 and

6   moved for the Exhibit's admission.  (Id. at 112.)  Exhibit 528 is a letter from U.S.

7   Department of Labor ("DOL") Regional Administrator Oliver Peebles, III to Defendants'

8   counsel in response to counsel's request under the Freedom of Information Act.  (Ex. List

9   (Doc. #206), Trial Ex. 528.)  Attached to the letter is an October 15, 2009, memorandum to

10  file written by Tina Chan, Wage and Hour Investigator for the DOL, regarding Defendant

11  CPS Security Solutions, Inc.  (Id. at T-7.)  The last paragraph on the first page of the

12  memorandum states the following:

13          Research was conducted on [CPS Security Solutions, Inc.] to verify if
            there is any pending investigation on the firm with other agencies.  It
14          was uncovered that currently there are two class action lawsuits filed
            against the employer in the Los Angeles County Superior Court for
15          issues relating to sleep time, break time, meal time and overtime.  The
            attorney representing CPS has provided copies of the court filing for
16          review (see copies provided).  A number of class action lawsuits had
            been filed against CPS in different California courts and CPS
17          successfully petitioned the California Judicial Council to have all the
            lawsuits coordinated before the Los Angeles County Superior Court
18          (see copies provided).

19  (Id.)  In response to questioning about Exhibit 528 by Defendants' counsel on cross-

20  examination, Coffey testified that as a result of a 2008/2009 DOL investigation, CPS paid

21  $389.04.  (Tr. (Doc. #208) at 111.)

22          On redirect examination, Plaintiffs' counsel, Mark Thierman ("Thierman"),[1]

23  asked Coffey about Exhibit 528 and Coffey's related testimony on cross-examination that

24

25  ───────────────

26          [1]  Normally, counsel asking questions on direct examination also performs redirect, but the
        Court allowed the change in counsel.  (Tr. (Doc. #208) at 121.)

1  Defendants paid a fine of only a few hundred dollars in relation to a DOL investigation.

2  (Id. at 123.)  Thierman directed Coffey to the language in Exhibit 528 quoted above which

3  referred to class action litigation.  (Id.)  Thierman then asked Coffey if he paid any money

4  to settle the lawsuits referred to in Exhibit 528, and whether he signed a settlement

5  document for $1.5 million in overtime pay, at which point Defendants objected.  (Id. at

6  124.)  The Court stated that the paragraph referred to in Exhibit 528 "opens the door on

7  these lawsuits.  There's no question about it.  It's in evidence now; it addresses that."  (Id. at

8  124-25.)  However, the Court also noted that Plaintiffs' counsel needed to connect the

9  lawsuits mentioned in Exhibit 528 with the $1.5 million settlement referred to in the

10  question being put to the witness, and there was no basis to do that.  (Id.)  The Court thus

11  sustained Defendants' objection.  (Id. at 125.)

12  Thierman then asked whether Coffey recalled ever paying $1.5 million to settle

13  an overtime and minimum wage lawsuit for trailer guards in California during the relevant

14  time period.  (Id. at 125-26.)  Coffey indicated he could not recall.  (Id. at 126.)  Mr.

15  Thierman then showed Coffey, and the jury, a signature page from a settlement agreement

16  in an attempt to refresh the witness's recollection.  (Id. at 126.)  Defendants objected.  (Id.)

17  The Court indicated Thierman could show the document to Coffey, but not to show it to the

18  jury.  (Id. at 126-27.)  Thierman then asked Coffey whether that was his signature on a

19  settlement agreement in an overtime case in California, and whether that document

20  refreshed his recollection as to the amount of money paid.  (Id. at 127.)

21  Defendants objected and moved to strike, arguing the Court already ruled this

22  evidence was inadmissible.  (Id.)  The Court noted that it had ruled this evidence was

23  inadmissible, but that was before the introduction of Exhibit 528, which mentioned

24  lawsuits.  (Id.)  Defendants then explained that the problem was that there was no

25  connection between the lawsuits mentioned in Exhibit 528 and the $1.5 million settlement

26  agreement being put before the witness.  (Id. at 127-28.)  The Court agreed and sustained

1   the objection.  (Id. at 128.)

2       The next morning, the parties and the Court again discussed the other lawsuits

3   and Exhibit 528.  (Tr. (Doc. #210).)  In the course of this discussion, the Court stated that

4   the "minute . . . defense counsel offered . . . the other document that contained that final

5   paragraph, you know, my -- my antenna went up; I'm sure [Thierman's] did.  I said okay,

6   now we're gonna be talking about these same damn cases that, you know, before we

7   weren't."  (Id. at 10.)  The Court nevertheless reiterated its position that delving into the

8   other cases would be distracting and confusing to the jury.  (Id. at 10-14.)

9       Defendants then moved for a mistrial based on the information about a $1.5

10  million settlement in an unrelated case being presented to the jury after the Court previously

11  had ruled such evidence inadmissible.  (Tr. (Doc. #211) at 15-49.)  Defendants presented

12  evidence that the litigation mentioned in Exhibit 528 was unrelated to the $1.5 million

13  settlement.  (Id. at 15-32.)  The Court granted the motion for a mistrial and excused the jury.

14  (Id. at 76-78, 84-85.)

15      Following the mistrial, Defendants moved for sanctions.  (Defs.' Mot. Sanctions

16  (Doc. #218).)  In ruling on this motion, the Court stated that the "history of this case does

17  reveal instances whereby Plaintiffs' counsel have multiplied these proceedings by

18  improvidently filing certain untimely motions without leave of the Court," and that

19  Plaintiffs caused the mistrial.  (Order (Doc. #246) at 2.)  The Court nevertheless concluded

20  that whether to sanction and if so, in what amount, were determinations best left until after

21  retrial.  (Id.)  The parties thereafter settled this matter, except for Plaintiffs' attorney's fees

22  and costs, and any sanctions arising from a renewed motion for sanctions by Defendants.

23  (Order on Stip. & Jt. Mot. to Approve Settlement Agreement (Doc. #249).)

24      Title 28 U.S.C. § 1927 provides that a district court "may" require an attorney

25  "who so multiplies the proceedings in any case unreasonably and vexatiously" to pay "the

26  excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The United States Court of Appeals for the Ninth Circuit has acknowledged that its "cases have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanctions" under § 1927. <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1107 (9th Cir. 2002). However, the standard appears to require recklessness plus "something more-such as an improper purpose." <u>Fink v. Gomez</u>, 239 F.3d 989, 993 (9th Cir. 2001); <u>see also</u> <u>B.K.B.</u>, 276 F.3d at 1107 (stating recklessness plus knowledge of proper procedure and knowledge that witness's testimony would be inadmissible under applicable rule was sufficient to impose sanctions);[2] <u>In re Keegan Mgmt. Co., Sec. Litig.</u>, 78 F.3d 431, 436 (9th Cir. 1996) ("For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned."). The Court has "substantial leeway . . . in determining whether and how much sanctions are appropriate." <u>Haynes v. City & Cnty. of S.F.</u>, 688 F.3d 984, 987 (9th Cir. 2012) (quotation omitted).

The Court, in its discretion, declines to sanction Plaintiffs' counsel under § 1927. Although Plaintiffs' counsel caused the mistrial and thereby multiplied the proceedings, he did not do so unreasonably and vexatiously given the context of the trial. The Court had ruled multiple times that evidence of other litigation would not be admissible. However, at trial and on cross-examination of Coffey, Defendants presented an exhibit which referred to other litigation. As the Court stated at the time, the statements in Exhibit 528 opened the door to some questioning about prior litigation, and Thierman reasonably may have

---

[2] <u>B.K.B.</u>'s conclusion that recklessness plus knowledge will suffice under § 1927 arguably is dicta, as the <u>B.K.B.</u> Court found that the sanctioned counsel's conduct in that case was both reckless and frivolous such that sanctions would have been appropriate under <u>In re Keegan Mgmt. Co., Sec. Litig.</u>, 78 F.3d 431, 436 (9th Cir. 1996). <u>B.K.B.</u>, 276 F.3d at 1107 n.8.

believed the Court's comments approved of inquiry in this area despite the Court's prior rulings.[3]  The time between when Defendants presented Coffey with Exhibit 528 and when Thierman asked about the inadmissible settlement was less than thirty minutes.  (Tr. (Doc. #208) at 110-11 (pause in proceedings at 4:06 p.m. just before Exhibit 528 is introduced); Mins. of Proceedings (Doc. #204) (court adjourns at 4:30 p.m.).  Given the fast-paced, changing circumstances of the trial, Thierman's error regarding whether the litigation mentioned in Exhibit 528 was related to the litigation which resulted in the $1.5 million settlement does not rise to the level of recklessness plus something more to constitute sanctionable conduct under § 1927.  As to the untimely summary judgment motions, the Court already declined to award sanctions and the Court will not revisit that decision.  (Tr. (Doc. #175) at 98.)  The Court therefore will deny Defendants' Renewed Motion for Sanctions.

## II.  MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS (Doc. #256)

The FLSA provides that "in addition to any judgment awarded to the plaintiff or plaintiffs," the Court "shall . . . allow a reasonable attorney's fee" and costs.  29 U.S.C. § 216(b).  Case law regarding what constitutes a reasonable fee under other federal fee-shifting statutes applies to the FLSA.  Haworth v. State of Nev., 56 F.3d 1048, 1051 (9th Cir. 1995) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992)).

To determine a reasonable attorney's fee, the Court multiplies the number of hours reasonably expended by a reasonable hourly rate.  Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008).  The resulting figure is referred to as the "lodestar," and this amount is a presumptively reasonable fee.  Id.  Although presumptively

---

[3]  Although Defendants' introduction of Exhibit 528 invited further inquiry regarding other litigation, in light of the Court's prior rulings, the better approach would have been for Plaintiffs' counsel to seek clarification outside the presence of the jury before questioning Coffey on this point. However, counsel's failure to do so does not amount to bad faith.

reasonable, the court may adjust the lodestar "to account for factors not already subsumed within the initial lodestar calculation." Id.  Those factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Morales v. City of San Rafael, 96 F.3d 359, 364 n.8 (9th Cir. 1996) (citing Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

### A.  Reasonable Rate

Plaintiffs request an hourly rate of $475 for attorney Greenberg, $350 for attorney Dana Sniegocki ("Sniegocki"), and $150 for paralegal Sydney Saucier ("Saucier"). Plaintiffs base the requested rates on Greenberg, Sniegocki, and Saucier's experience and expertise, as well as on rates which the Court has awarded in other cases.  Defendants respond that the Court should reduce the requested rates because the other cases are not determinative of a reasonable rate in this case, and Defendants have presented expert testimony that the rates should be substantially lower.  In reply, Plaintiffs object to Defendants' use of an expert who was not previously disclosed, has not complied with Rule 26, and who Plaintiffs have had no opportunity to depose.  Plaintiffs also argue Defendants' expert failed to account for rates for employment law attorneys, rather than general litigators at small firms in Las Vegas.  Plaintiffs contend Defendants' own lawyers in this case, whose experience is similar to that of Plaintiffs' counsel, charge over $400 per hour.

The Court determines a reasonable hourly rate by reference to the "prevailing market rates in the relevant community" for an attorney of similar experience, skill, and reputation.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013) (quotation

omitted).  The relevant community generally is "the forum in which the district court sits." Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010) (quotation omitted).  In determining a reasonable hourly rate, the court may consider "the fees awarded by other judges in the same locality in similar cases."  Moreno v. City of Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008); see also United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) ("[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").  The party seeking fees bears the burden of producing satisfactory evidence to justify the requested rate.  Gonzalez, 729 F.3d at 1206.

Greenberg represents plaintiffs in wage and hour litigation on a contingency basis and he therefore does not have an hourly rate he customarily charges. (Pls.' Mot. Atty's Fees & Costs (Doc. #256), Ex. A ["Greenberg Decl."] at 3.)  Greenberg has been practicing law since 1993 and has over 20 years of experience in wage and hour litigation.  (Id. at 5.) Greenberg also has experience in class action litigation.  (Id.)  Sniegocki has been practicing since 2008 and has four years of experience litigating wage and hour cases.  (Id. at 6.)  Saucier has been a paralegal with Greenberg's firm since 2007.  (Id. at 7.)  Saucier graduated from law school in 1983 but was never licensed to practice.  (Id.)  Saucier has prior paralegal experience with the Office of the General Counsel of the California State University system, as well as the Federal Public Defender's office in California, however it is unclear precisely how long she has worked as a paralegal prior to starting with Greenberg's firm.  (Id.)

In other litigation in this Court, the Court has approved rates of $450 for Greenberg and $250 for Sniegocki, despite objections from the opposing parties that lower rates were appropriate.  (Joseph Valdez v. Cox Communications of Las Vegas, Inc., 2:09-CV-01797-PMP-NJK, Pl.'s Mot. Atty's Fees & Costs (Doc. #295) at 3 & Ex. 2 (requesting those rates for a total fee award of $50,301.56 for work performed from 2009 to 2011),

Opp'n to Mot. Atty's Fees & Costs (Doc. #310) at 11-12, Order (Doc. #351) granting requested fees in the amount of $50,301.56); <u>Phelps v. Cox Communications Las Vegas, Inc.</u>, 2:11-CV-00801-PMP-CWH, Atty's Decl. (Doc. #37) (requesting $450 rate for Greenberg for total fee award of $13,725 for work performed in 2011), Def.'s Objection to Atty's Decl. (Doc. #39) at 9-12) (objecting that requested $450 rate was excessive), Order (Doc. #45) (awarding requested fee of $13,725).)

In contrast, Defendants' expert, Grant D. Stiefel ("Stiefel"), opines that reasonable rates in this case would be $300 per hour for Greenberg, $175 per hour for Sniegocki, and $115 per hour for Saucier.  (Defs.' Opp'n to Mot. Atty's Fees & Costs (Doc. #260) ["Defs.' Opp'n"], Ex. 1 at 19, 25, 30.)  Stiefel bases this opinion on "prevailing market rate data for Las Vegas law firms of comparable size, and for legal professionals with similar experience in the relevant area of expertise."  (<u>Id.</u> at 17.)  Stiefel rejects Plaintiffs' reliance on other cases in this and other courts because some are dissimilar in nature, and in others the requested rates were denied.  (<u>Id.</u> at 18.)  Stiefel instead refers to "RateDriver," a database which "provides estimated billable rates for U.S. lawyers by metro area, practice area, firm size, and years of experience."  (<u>Id.</u> at 19-20.)  Stiefel also refers to a "Real Rate Report Snapshot" from TyMetrix to evaluate rates of Las Vegas litigation partners and associates.  (<u>Id.</u> at 22.)  Both the RateDriver and Real Rate Report Snapshots showed much lower rates for partner and associate billing in Las Vegas than requested by Plaintiffs.  (<u>Id.</u> at 19-22.)  Stiefel also refers to the ALM Legal Intelligence Survey of Law Firm Economics, which, in Stiefel's opinion, also suggests Plaintiffs' requested rates are excessive.  (<u>Id.</u> at 23-24.)  As to Saucier, Stiefel refers to a report by the National Association of Legal Assistants and Paralegals from 2012, which, in Stiefel's opinion, suggested a proper rate of between $108 and $124 per hour based on Saucier's experience and the law firm's size, with Stiefel recommending the Court adopt a rate of $115 per hour. (<u>Id.</u> at 28-30.)

The Court rejects Stiefel's opinions for several reasons.  First, assuming without deciding that Defendants could designate an expert on fees at this stage of the proceedings, Stiefel's report does not fully comply with Federal Rule of Civil Procedure 26 because it does not include a list of all other cases in which, during the previous 4 years, Stiefel testified as an expert at trial or by deposition, nor does it disclose his compensation for the work rendered in this case.  Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  Moreover, Stiefel acknowledges that the proper inquiry is the prevailing rate in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. (Defs.' Opp'n, Ex. 1 at 17.)  Stiefel also indicated that RateDriver could be queried regarding hourly rates related to "specific practice areas," but Stiefel described his search as seeking the "average rate charged by litigation attorneys at Las Vegas area law firms of comparable size to the Greenberg firm."  (Id. at 20.)  Stiefel did not indicate he searched for comparable rates for labor and employment attorneys in Las Vegas with comparable experience.  Additionally, Plaintiffs have not had the opportunity to depose Stiefel regarding his conclusions.

The Court finds that declarations from Defendants' counsel regarding their rates are more instructive than Stiefel's opinion.  Defendants' counsel are experienced labor and employment attorneys in Las Vegas, and thus their rates are informative on the prevailing market rate.  Defense counsel have requested fee rates for Carol Davis Zucker ("Zucker") at $400 per hour and Timothy Roehrs ("Roehrs") at $240 per hour in this very litigation. (Defs.' Renewed Mot. for Sanctions, Ex. 6 (requesting $5,160 for 12.9 hours of work for Zucker and $2,784 for 11.6 hour of work for Roehrs), Ex. 8 (setting forth in the attached billing records $400 and $240 hourly rates for work performed for tasks in this case).  Similarly, in a declaration before the Bankruptcy Court in an unrelated case, Zucker indicated that as of December 2011, her firm charged from $325 to $500 per hour for partners, $190 to $325 per hour for associates, and $80 to $125 per hour for paralegals.

(Pls.' Reply to Defs.' Opp'n to Pl.s' Mot. Atty's Fees & Costs (Doc. #267) ["Pls.' Reply"], Ex. F at 2.)

Although the Court previously has awarded a rate of $450 for Greenberg, the Court concludes that the evidence that Zucker charged her client $400 per hour for work in this very case suggests that the prevailing market rate in Las Vegas for experienced labor and employment attorneys performing the type of work required in this case would be $400, and less experienced labor and employment attorneys would charge a rate of $240. The Court therefore will award Greenberg an hourly rate of $400, and Sniegocki an hourly rate of $240.

As for Saucier, the Court finds Plaintiffs have not presented satisfactory evidence supporting the requested $150 rate for her time. In his affidavit supporting the fee request, Greenberg states $150 is "reasonable and appropriate," but he does not state this amount reflects the prevailing rate in the market nor does he explain how he came to that conclusion. (Greenberg Decl. at 7.) This Court's prior awards to Plaintiffs' counsel did not include paralegal hours, and thus the Court has not previously set forth a rate for Saucier. (Joseph Valdez v. Cox Communications of Las Vegas, Inc., 2:09-CV-01797-PMP-NJK, Pl.'s Mot. Atty's Fees & Costs (Doc. #295); Phelps v. Cox Communications Las Vegas, Inc., 2:11-CV-00801-PMP-CWH, Atty's Decl. (Doc. #37).)

Plaintiffs refer to three other cases in this Court, Westerfield v. Wyndham, 2:05-CV-01264-JCM-PAL, In re USA Commercial Mortgage, 2:07-CV-00892-RCJ-GWF, and Fifty-Six Hope Road v. A.V.E.L.A., Inc., 2:08-CV-00105-PMP-GWF, to support their fee motion. However, neither the affidavit in Westerfield, nor the decision in In re USA Commercial Mortgage set forth a prevailing market rate in Las Vegas for paralegal work. (Westerfield v. Wyndham, 2:05-CV-01264-JCM-PAL, Decl. of Joseph C. Liburt (Doc. #93)); In re USA Commercial Mortg. Co., 802 F. Supp 2d 1147, 1180-81 (D. Nev. 2011). Fifty-Six Hope Road v. A.V.E.L.A., Inc. set rates for paralegals based on a declaration from

an attorney in that case stating that paralegal rates at a law firm in Los Angeles in an intellectual property case ranged from $121.50 to $220 per hour.  (Fifty-Six Hope Road v. A.V.E.L.A., Inc., 2:08-CV-00105-PMP-GWF, Pls.' Mot. Atty.'s Fees (Doc. #390), Decl. of Jill M. Pietrini at 7.)  The defendants in that case did not challenge the requested rates. (Order (Doc. #438) at 10.)  The Court does not find this unchallenged declaration to be satisfactory evidence of the prevailing rate for Las Vegas paralegals in a wage and hour case generally, nor have Plaintiffs presented satisfactory evidence of where Saucier would fall within this range given the less than clear explanation of her experience.  Consequently, in their initial Motion, Plaintiffs have not provided satisfactory evidence of any rate for Saucier.

Defendants, however, do not argue that Plaintiff should get no recovery for Saucier's time.  Rather, Defendants contend the requested rate is too high.  In reply, Plaintiffs supply a declaration by Zucker in an unrelated bankruptcy case in which she states her firm charges from $80 to $125 per hour for paralegal work.  (Pls.' Reply, Ex. F at 2.) This constitutes the best evidence before the Court of the prevailing market rate for a paralegal doing this type of work in Las Vegas during the relevant time period.  Given Plaintiffs' failure to present competent evidence of the prevailing rate in their initial Motion, as well as the vague description of Saucier's experience, the Court will set Saucier's rate in the low to middle end of this range, at $90 per hour.

**B.  Reasonable Hours Expended**

Plaintiffs request compensation for 542.6325 hours for Greenberg, 269.4925314.05 hours for Sniegocki, and 185.045 hours for Saucier.  (Greenberg Decl. at 2-3.)  Plaintiffs contend the hours expended were reasonable, but Plaintiffs nevertheless have reduced the hours by eliminating entries for unsuccessful motions and for work performed on certifying the state law class claims.  Additionally, Plaintiffs reduced Greenberg's requested hours by ten percent, Sniegocki's by fifteen percent, and Saucier's

by thirty percent.  Plaintiffs argue that Defendants' litigation conduct increased the time necessarily spent to pursue Plaintiffs' claims.

Defendants respond by identifying seven categories of billing entries for which Defendants contend Plaintiffs should not receive fees:  (1) 23.9 hours for the September 7, 2010 mediation; (2) 23.8 hours for a motion to compel; (3) 23.75 hours for written discovery; (4) 94.6 hours for preparation of Plaintiffs' unsuccessful summary judgment motion; (5) 8.6 hours for Plaintiffs' Motion to Delineate Findings; (6) 32.05 hours for motion in limine briefing; and (7) 89.6 hours for Greenberg, 23.6 hours for Sniegocki, and 71 hours for Saucier for trial preparation.  Defendants also contend Saucier's hours should be reduced for noncompensable clerical work and vague time entries, and Greenberg's and Saucier's time should be reduced for failing to bill in tenth-of-an-hour increments.

A reasonable number of hours expended means the number of hours an attorney reasonably could have billed to a private client.  Gonzalez, 729 F.3d at 1202.  If the Court determines some requested fees should be excluded as unreasonable, the Court may exclude billed entries pursuant to an hour-by-hour analysis.  Id. at 1203.  Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application."  Id. (internal quotation marks omitted).  However, when cutting by a percentage, the Court must clearly explain its reasons for "choosing a given percentage reduction," with one exception. Id.  The Court may impose a "small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." Moreno, 534 F.3d at 1112.  "In all other cases, however, the district court must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did." Gonzalez, 729 F.3d at 1203.  The prevailing party bears the burden of submitting billing records to establish that the hours requested are reasonable.  Id. at 1202.

1          1.  September 2010 Mediation

2          Defendants argue 23.9 hours should be deducted for billing for the September

3   2010 mediation because, as set forth in Newman's declaration, Plaintiffs' counsel refused to

4   negotiate a settlement on anything but an opt-out class-wide basis until class certification on

5   the state law claims was denied.  Defendants thus contend fees incurred in relation to the

6   mediation are not reasonably chargeable because they were unrelated to the FLSA claim.

7   Defendants contend they are not revealing confidential communications from the mediation

8   by providing this information.

9          Plaintiffs respond by moving to strike Newman's declaration.  Plaintiffs contend

10  Newman improperly has disclosed information from the mediation and other settlement

11  talks, and has mischaracterized the parties' settlement positions, including incorrectly

12  describing Defendants' settlement offers as "reasonable."  Plaintiffs contend Newman made

13  these disclosures while at the same time declining to waive any objections to Plaintiffs

14  releasing information about the mediation and settlement talks.  Plaintiffs contend that if

15  they were given leave to disclose the parties' settlement and mediation talks, there would be

16  no basis for the Court to deduct fees related to the mediation.

17         Defendants respond that Plaintiffs' settlement positions are relevant and may be

18  admissible for a post-judgment fee dispute.  Defendants argue the fact that Plaintiffs'

19  counsel would not discuss settlement except on an opt-out class-wide basis demonstrates

20  that the mediation was directed at Plaintiffs' state law claims, not the FLSA claims.

21  Defendants also argue the amount Plaintiffs demanded in settlement is relevant to show

22  Plaintiffs achieved relatively little success compared to what they sought.  Finally,

23  Defendants contend the Court should not allow Plaintiffs to discuss what happened during

24  settlement talks and the mediation because it would expand the litigation over fees.

25         In his declaration supporting Defendants' Opposition, Newman states that he did

26  not attend the September 2010 mediation because he had a court appearance, and by the

time he arrived at the mediation, it had concluded.  (Defs.' Opp'n, Ex. 2 at 3.)  Newman states:

> Without disclosing anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation, I am able to state the following facts based upon personal knowledge of events outside the context of mediation.  (1) Mr. Tallman's demand to settle his class action was $2,000,000 inclusive of attorney's fees; (2) I had authority to settle Mr. Tallman's individual claim (inclusive of attorney's fees) against CPS for an amount in excess of $45,000, which would have yielded more than the amount he eventually recovered in this litigation; and (3) during conversations I had with Mr. Greenberg following the Mediation and outside the scope of mediation, he categorically refused to discuss any settlement of Mr. Tallman's case on less than a class-wide basis.  Up and until the time his state law claims were severed from his FLSA claims and (at his request) remanded to state court, Mr. Greenberg would not entertain settlement of the FLSA case as an opt-in collective action.

(Id. at 3-4.)  Newman avers that throughout the early stages of the case, Defendants offered to stipulate to the action proceeding as a collective opt-in class under the FLSA, but Greenberg refused.  (Id. at 4.)  Newman also states that at the first mandatory settlement conference, Defendants made "reasonable offers" to Plaintiffs.  (Id. at 5.)

Plaintiffs attach to their Reply to their Motion to Strike a declaration from Greenberg in which Greenberg states:

> Contrary to defendants' claims, I was always available to discuss settlement of just the Fair Labor Standards Act claims made in this case during the time period the state law class claims were also pending before this Court.  While I did not propose any such partial or piecemeal settlement to the defendants of just those FLSA claims during that time period, I never prevented defendants from making any such "pure FLSA" settlement proposal during that period.  Except for an offer of judgment made to plaintiff Tallman on September 10, 2010, and a settlement proposal communicated through mediator Mark Rudy at a mediation overseen by him on September 7, 2010, the defendants made no settlement proposals whatsoever during this time period.

(Pls.' Reply to Defs.' Opp'n to Pls.' Mot. to Strike Decl. of Jim D. Newman (Doc. #268), Ex. A at 1-2.)

The Court will disregard the Newman affidavit for purposes of determining whether to deduct the requested hours for preparation for and attendance at the September

2010 mediation because Newman does not purport to disclose what happened at the mediation.  Absent evidence of what happened at the mediation, the Court has no evidentiary basis to conclude that Plaintiffs' counsel did not prepare for and attend the mediation in good faith, or that Plaintiffs' counsel refused to entertain offers related solely to the FLSA claims at the mediation.  Having no evidentiary basis to conclude that Plaintiffs' counsel acted with anything other than good faith and with an eye towards resolving the FLSA claims at the mediation, the Court finds no basis to deduct hours related to the September 2010 mediation.

### 2.  Motion to Compel

Defendants argue the Court should exclude hours expended on Plaintiffs' Motion to Compel Identity of the Putative Class Members because Defendants offered to stipulate to conditional certification of an FLSA class and have notice sent by a third party administrator.  Plaintiffs respond that the Court granted Plaintiffs' Motion to Compel because the information on other trailer guards was relevant and necessary to discover other witnesses.  Plaintiffs thus contend they should be compensated for time spent on the Motion to Compel.

Magistrate Judge Leen granted Plaintiffs' Motion to Compel because the trailer guards would have relevant and discoverable information as witnesses to Defendants' policies and procedures with respect to Plaintiff Tallman's individual claims.  (Mins. of Proceedings (Doc. #39); Tr. (Doc. #52) at 22, 27.)  There is no basis to deny attorney's fees for a successful motion to compel.  The Court therefore will not deduct any hours related to Plaintiffs' Motion to Compel.

### 3.  Written Discovery

Defendants argue Plaintiffs' discovery propounded in December 2010 and January 2011 was inefficient and propounded during a time period for which no additional discovery had been allowed.  Plaintiffs respond that Defendants have failed to support this

objection with competent evidence.  Plaintiffs also contend Defendants inaccurately state that the discovery deadline had expired at that time.  Plaintiffs also assert the discovery requests were successful because they ultimately resulted in Defendants entering into a stipulated statement of facts rather than engage in the discovery.

Defendants have not provided any evidence from which the Court could conclude that the discovery Plaintiffs conducted between December 2010 and January 2011 was so abusive as to warrant a denial of fees in relation thereto.  Additionally, pursuant to the Scheduling Order then in effect, discovery had been extended to February 28, 2011. (Mediation Report & Stipulated Request for Am. Sched. Order (Doc. #23).)  Thus, these discovery requests were propounded during a period when discovery was open.  The Court finds no basis to deduct these hours.

### 4.  Plaintiffs' Motion for Summary Judgment

Defendants argue the Court should not include time spent briefing Plaintiffs' unsuccessful summary judgment motion, as opposed to time spent opposing Defendants' summary judgment motion.  Plaintiffs respond that their Motion for Summary Judgment was intertwined with their opposition to Defendants' summary judgment motion on these same issues.

The Court will not deduct hours from the preparation of Plaintiffs' Motion for Summary Judgment.  Although unsuccessful, Plaintiffs' Motion for Summary Judgment was not unreasonable, particularly because Plaintiffs sought judgment on issues for which Defendants bore the burden of proof.  (Pls.' Mot. Summ. J. (Doc. #84) at 6-26.) Additionally, the Motion raised many of the same issues as Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, and thus time spent on the Motion reduced the time necessary for preparing the Opposition.  Plaintiffs' counsel already has reduced the hours expended by Greenberg, Sniegocki, and Saucier by ten, fifteen, and thirty percent respectively.  The Court does not find any further reduction in this category is warranted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 5.  Plaintiffs' Motion to Delineate Findings

Defendants contend the hours spent briefing Plaintiffs' Motion to Delineate Findings should be deducted because the motion was unauthorized and unsuccessful. Plaintiffs respond that this Motion helped to frame the issues at trial and the jury instructions, and Defendants later agreed to some of the requests in the Motion which Defendants previously had opposed.

Plaintiffs' Motion to Delineate Findings (Doc. #129) raised the issue of what questions properly were before the jury, and which were properly for the Court to decide. The Court will exclude the hours spent preparing this Motion.  These issues could have been resolved through the parties' proposed jury instructions, and did not call for a separate motion.  The Court therefore will deduct 8.6 hours of Greenberg's time for preparation of this unnecessary motion.

### 6.  Motions in Limine

Defendants argue the Court should delete hours for all motion in limine briefing because Defendants' motions were largely successful, Plaintiffs' motions largely failed, and the genuine issues Plaintiffs raised could have been resolved through a meet and confer, rather than motion practice.  Plaintiffs respond that Defendants fail to support this objection with evidence that Plaintiffs' issues could have been resolved through a meet and confer.

The Court will not deduct time related to Plaintiffs' Motion in Limine.  Plaintiffs filed a four-part Motion in Limine, two parts of which overlapped with motions in limine filed by Defendants.  (Mot. in Limine (Doc. #121); Mot. in Limine (Doc. #124); Mot. in Limine (Doc. #125).)  Defendants agree that the two non-overlapping issues raised by Plaintiffs were "legitimate issues."  (Defs.' Opp'n at 7.)  Although Defendants now contend a meet and confer would have resolved those two issues, Defendants opposed all four issues in the Motion.  (Defs.' Opp'n to Pls.' Mot. in Limine (Doc. #140).)  The two issues which overlapped with Defendants' motions were closely contested, and although Defendants

ultimately prevailed, the Court does not find a basis to deduct hours from the in limine briefing.  (Tr. (Doc. #175) at 68-83; Tr. (Doc. #215) at 24-57; Order (Doc. #201).)

### 7.  Trial Preparation

Defendants argue that because Plaintiffs caused the mistrial, the Court should deduct all time for trial preparation.  Plaintiffs respond that in light of the mistrial, they have sought no compensation for time spent at trial.  However, Plaintiffs contend they should be compensated for time spent preparing for trial because Defendants insisted on going to trial and never made a pre-trial settlement offer close to the one to which the parties ultimately agreed.

The Court will not deduct hours for trial preparation based on the mistrial.  Defendants essentially request a sanction under the Court's inherent power.  The Court has declined to sanction Plaintiffs for the mistrial under § 1927.  The Court also declines to sanction Plaintiffs' counsel under the Court's inherent power because the Court does not find Plaintiffs' counsel acted in bad faith, vexatiously, for oppressive reasons, or that counsel willfully abused the judicial process.  See Fink, 239 F.3d at 992-94.  Further, Plaintiffs' counsel already deleted from their fee request any hours for time spent at the trial in light of the mistrial.  The Court will not further reduce the time in this category.

### 8.  Quarter Hour Time Billing

Defendants contend Greenberg and Saucier improperly billed time in quarter- or half-hour increments, thereby inflating the requested hours.  Stiefel contends Greenberg and Saucier should bill at a tenth of an hour, or six minutes, rather than in fifteen minute increments.  Plaintiffs respond that just because some time entries were for a quarter of an hour does not mean Greenberg or Saucier improperly billed in fifteen minute increments as a general matter, as shown by the tenth of an hour time entries in the billing records.

The Court will not deduct time based on quarter hour time keeping.  It is apparent from the billing records that Plaintiffs' counsel's minimum billing increment is a tenth of an

hour, as many entries are billed at a tenth of an hour.  (Pls.' Mot. Atty's Fees, Exs. B, C.)
That some tasks are billed at a quarter of an hour does not suggest Plaintiffs' counsel
systematically overbilled by using a minimum time increment of a quarter of an hour,
thereby overstating the time spent on simpler tasks.  The Court will address Saucier's time
entries separately below.

9.  Saucier's Time Entries

Defendants contend Saucier's hours are excessive because most of her time
entries are vague or are for noncompensable clerical work.  Plaintiffs respond that Saucier's
time is properly chargeable as preparing and organizing trial binders of exhibits needed for
trial, conducting investigative work such as interviewing trailer guard witnesses, and
preparing documentation in support of Plaintiffs' summary judgment motion.  Plaintiffs
also argue that to the extent some time is not chargeable, Plaintiffs already have reduced
Saucier's time by thirty percent, and no further reductions are warranted.

As to Saucier's time, many time entries list clerical activity that Plaintiffs have
not established are properly chargeable at all in the relevant market, much less at a paralegal
rate.  See Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins.
Co., 460 F.3d 1253, 1257 (9th Cir. 2006).  For example, Saucier includes entries for making
copies, printing documents, filing documents, mailing documents, and scheduling.
Additionally, most of Saucier's time entries so vaguely describe the work performed, the
Court cannot "make a fair evaluation of the time expended, the nature and need for the
service, and the reasonable fees to be allowed."  United Steelworkers of Am. v. Ret. Income
Plan For Hourly-Rated Emps. of ASARCO, Inc., 512 F.3d 555, 565 (9th Cir. 2008)
(quotation omitted).

The Court has conducted an independent review of Saucier's time entries and
concludes only the following hours will be awarded as compensable, non-vague time
entries:

| | | |
|---|---|---|
| 9/10/09 | Draft form for initial disclosures | 1.0 |
| 12/28/10 | Preparing discovery | 0.5 |
| 12/29/10 | Discovery | 1.5 |
| 2/1/11 | Reviewing documents for discovery requests | 2.0 |
| 2/23/11 | Drafting responses to discovery | 1.5 |
| 5/20/11 | Prepare motion for summary judgment for filing | 9.0 |
| 10/14/11 | Creating excel files for trial | 4.0 |
| 10/18/11 | Document review for excel files on damages | 5.0 |
| 10/20/11 | Perform calculations for excel files on damages | 4.0 |
| 10/21/11 | Preparing notebooks and other documents for trial | 7.0 |
| 5/15/13 | Discovery | 1.0 |
| 5/17/13 | Supplemental production | 0.5 |
| 6/15/13 | Discovery | 1.0 |
| 6/28/13 | Draft reply | 2.0 |
| 8/21/13 | Prepare time for fee | 2.5 |
| 12/2/13 | Final review, edit, proof of time records for fee | 1.5 |
| | Total: | 44 |

The Court therefore will award 44 hours of Saucier's time.

### D. Adjustments to Lodestar

Defendants request the Court make a downward adjustment in the lodestar because Plaintiffs achieved limited success. Defendants also argue the Court should reduce the lodestar based on work performed on the state law, non-FLSA claims. Finally, Defendants contend the Court should adjust the lodestar downward based on Plaintiffs' conduct of the litigation.

Plaintiffs respond that the Court may consider only those settlement offers that are in the record, and those rejected offers show Plaintiffs obtained a substantially greater

settlement amount compared to Defendants' earlier offers of judgment.  Plaintiffs thus

contend they have been successful in this litigation, and no downward adjustment is

warranted.  As to the state law claims, Plaintiffs contend they already have deducted work

related to class certification of the state law claims, as well as any work performed after

those claims were remanded to state court.  Plaintiffs also contend Defendants have

engaged in conduct which protracted the litigation, not Plaintiffs.

### 1.  Limited Success

The Court may exercise discretion and reduce an attorney's fee award when the

prevailing party's success is limited.  Hensley v. Eckerhart, 461 U.S. 424, 436-47 (1983).

However, the Court does not find a basis to reduce the lodestar based on limited success in

this case.  Defendants refer to a $2 million settlement offer Plaintiffs made early in the case

to argue Plaintiffs' later recovery of a total of $121,800 demonstrates limited success.

However, even assuming the Court considered this evidence over Plaintiffs' objection, the

$2 million number is not a proper reference point, as that settlement offer included the then-

pending state law class claims, which since have been remanded to state court and remain

pending. (Defs.' Opp'n, Ex. 2 at 3-4.)  Defendants also reference the fact that they had

settlement authority of over $45,000 for Plaintiff Tallman.  (Id. at 3.)  However, Defendants

do not indicate they ever actually made a settlement offer to Defendant Tallman at or above

$45,000.  Defendants concede Plaintiff Tallman received approximately seventy percent of

his claimed damages, and the opt-in Plaintiffs received between nineteen and forty-two

percent of their claimed damages. (Defs.' Opp'n at 2-3.)  Given the hard-fought nature of

this litigation and Defendants' good faith defense, the Court does not find these recoveries

so limited in nature that a reduction to the lodestar is warranted.

### 2.  Litigation Conduct

The Court will not adjust the lodestar based on either side's litigation conduct.

What one side views as unnecessarily prolonging the litigation, the other would call

appropriate zealous advocacy for their clients.  The Court will not review the entire record

in an attempt to ferret out each side's motives for various strategies employed and decisions

made in this case for the purpose of resolving an attorney fee dispute.

### 3.  State Law Class Claims

The Court will adjust the lodestar to account for the fact that some work

Plaintiffs' counsel performed prior to the Court remanding the state law class claims were

performed on non-FLSA claims.  Plaintiffs' counsel state they omitted from the fee request

any fees related to class certification of the state law claims as well as any work performed

on those claims in state court following remand.  (Pls.' Mot. Atty' Fees & Costs at 8.)

However, counsel do not indicate they apportioned other work performed on both the FLSA

and non-FLSA claims.  Most of the fees would have been incurred as part of counsels'

pursuit of the overall litigation, including the successful FLSA claim.  Rather than attempt

to determine on an item-by-item basis how much work was performed for the non-FLSA

claims, the Court will apply a "haircut" ten percent reduction to the lodestar to reflect that

while the FLSA and non-FLSA claims were interrelated factually, there were legal

differences between the two types of claims, and some portion of the work was performed

for state law claims for which no fee may be awarded in this action.

### 4.  Other Kerr Factors

This is not the rare case where any of the <u>Kerr</u> factors otherwise warrant

adjusting the lodestar.  The time and labor required are adequately reflected in the lodestar,

as is the customary fee and reasonable number of hours expended.  Although Defendants'

safe harbor defense involved some novel questions, Plaintiffs are adequately compensated

for their research and drafting time as reflected in the lodestar.

The skill needed to perform the legal service properly and the experience,

reputation, and ability of Plaintiffs' counsel support the lodestar award.  As discussed with

respect to the reasonable rate, Plaintiffs' FLSA claims required skilled and experienced

attorneys, and Greenberg has many years of relevant experience.  The hourly rates adequately compensate for counsels' skill and experience.

The preclusion of other employment by Plaintiffs' counsel due to acceptance of the case also supports the awarded lodestar, as the case has been vigorously litigated over a period of several years.  However, the case was not so consuming as to warrant enhancing the fee award.  Greenberg mentions one case he declined to accept due to his work on this case, but the Court has no way to evaluate whether that single case would warrant adjusting the lodestar upward, nor do Plaintiffs make any such request.

The undesirability of the case supports the lodestar award.  Plaintiffs' counsel took this case on contingency for individuals who, prior to their employment with Defendants, were homeless.  Consequently, the risk that Plaintiffs would fail to maintain contact with counsel prior to final judgment raised the specter that Plaintiffs' counsel could expend significant time and resources that would go uncompensated.

Finally, awards in similar cases support the lodestar.  As set forth in Plaintiffs' Motion, there is no requirement that fee awards be proportionate to the monetary recovery, unduly restricting fee awards would discourage attorneys from taking FLSA cases, and a successful FLSA claim vindicates statutory rights, even if it does not result in a substantial monetary recovery.  See Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1033 (9th Cir. 2012); Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1473 (9th Cir. 1983), abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 539 (1985) (affirming fee award of $100,000 for a less than $20,000 recovery).  Defendants do not cite any case law suggesting the requested award is out of line with awards in similar cases.  The time limitations imposed by the client or the circumstances and the nature of the relationship between counsel and Plaintiffs are not relevant to this action.  Based on all of the factors discussed above, the Court therefore concludes that the adjusted lodestar is the proper fee to award in this case.

**E.  Summary of Attorney's Fee Award**

Based on the above rulings, the Court will award the adjusted lodestar, calculated as follows:

Greenberg:    534.0325 hours x $400 per hour = $213,613.00

Sniegocki:    269.4925 hours x $240 per hour = $64,678.20

Saucier:       44 hours x $90 = $3,960.00

Lodestar:  $282,251.20

- $28,225.12 (10% reduction to lodestar for non-FLSA work)

Total fee award = **$254,026.08**

The Court will deny Plaintiffs' request in their Reply to add $10,260 for time spent on preparing the reply.  Plaintiffs already included time for preparation of the reply brief in their initial fee calculation.  The Court therefore will award a total of $254,026.08 as the reasonable attorney's fee award in this case.

**F.  Costs**

Plaintiffs request $16,522.75 in costs.  Defendants do not object to the requested costs, other than $6,177.40 related to the September 2010 mediation.  For the reasons set forth above, the Court will grant Plaintiffs' request for costs related to the mediation.  As Defendants have no other objections to the requested costs, the Court will award Plaintiffs **$16,522.75** in costs.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED Plaintiff's Motion for an Award of Attorney's Fees and Costs (Doc. #256) is hereby GRANTED in part and DENIED in part as set forth more fully in this Order.

IT IS FURTHER ORDERED that Defendants' Renewed Motion for Sanctions Against Plaintiffs' Counsel (Doc. #259) is hereby DENIED.

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike Declaration of Jim D. Newman (Doc. #264) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Judgment on the attorney's fee award and costs shall be entered in favor of Plaintiffs and against Defendants CPS Security (USA), Inc. and CPS Construction Security Plus, Inc. in the amount of **$254,026.08** and costs in the amount of **$16,522.75**.

DATED:  June 3, 2014

_____
PHILIP M. PRO
United States District Judge

29